Gaile NIXON, Individually and A/N/F
of R.M.V., A Minor, Petitioner,

v.

MR. PROPERTY MANAGEMENT
COMPANY, INC. et al.,
Respondents.

No. C–3425.

Supreme Court of Texas.

May 1, 1985.

Rehearing Denied June 19, 1985.

Randall Moore, Dallas, for petitioner.

Jackson, Walker, Winstead, Cantwell & Miller, Jack Pew, Jr., Dallas, for respondents.

HILL, Chief Justice.

This is an action for damages filed on behalf of a minor, R.M.V., against Mr. Property Management Company and Brett Davis. R.M.V. was raped in a vacant unit of the defendants' apartment complex. She was not a resident or a guest at the complex. The trial court granted Mr. Property and Brett Davis' motion for summary judgment. The court of appeals affirmed the judgment. 675 S.W.2d 585. We reverse the judgments of the courts below and remand the cause to the trial court for a trial on the merits.

*Background*

R.M.V., age 10, resided at the Landmark Apartments. At about 7:00 p.m. on August 7, 1981, while it was still light, a young man abducted R.M.V. from a sidewalk outside the Landmark Apartments and dragged her to the Chalmette Apartments, located diagonally across the street from the Landmark Apartments. According to R.M.V.'s affidavit, her assailant took her "directly to a vacant apartment at Chalmette Apartments." There, he raped her, put her in the closet, told her not to leave, and disappeared. There are no other known witnesses. Chalmette Apartments learned of the incident later that night when a police officer spoke to the maintenance man and the resident manager.

There was evidence concerning the unit's dilapidated condition. The responding officer, George Tilley, stated in his affidavit that: "The glass was broken from the windows and the front door was off its hinges. The apartment unit in question was empty, filthy, dirty and full of debris." In his deposition, Brett Davis, the owner of Chalmette Apartments, admitted that leaving doors off hinges and windows without panes would tend to encourage vagrants to occupy these apartments. Gene Jacobson, president of Mr. Property Management Company, stated in his deposition that one reason for securing vacant units was to prevent this type of crime from occurring. The testimony was as follows:

Q. What is the reason why you should keep doorknobs on doors of vacant apartments?

A. Numerous reasons. One, I would say, to secure—Okay....

Q. Any other reason?

A. I think there are many reasons. One of the reasons would be for the simple reason we're here.

A Dallas City Ordinance established minimum standards for landowners:

SEC. 27–11. MINIMUM STANDARDS, RESPONSIBILITIES OF OWNER.

(a) *Property standards.* An owner shall:

(6) keep the doors and windows of a vacant structure or vacant portion of a structure securely closed to prevent unauthorized entry.

Revised Code of Civil and Criminal Ordinances of the City of Dallas § 27.11(a)(6).

The summary judgment evidence included a list of police incident reports concerning the Chalmette Apartments during the two years prior to the rape. Police had investigated numerous crimes committed at the complex including one attempted murder, two aggravated robberies, two aggravated assaults, sixteen apartment burglaries, four vehicle burglaries, four cases of theft, five cases of criminal mischief, and one auto theft.

Gaile Nixon, R.M.V.'s mother and next friend, filed suit alleging that Mr. Property Management Company, Inc., and Brett Davis (manager and owner, respectively, of Chalmette Apartments) and I.V. Investment, Inc. and James R. Liddle (manager and owner, respectively, of Landmark Apartments) were liable in tort for R.M.V.'s injuries. Nixon settled with the Landmark Apartment interests. Brett Davis purchased Chalmette Apartments in March of 1981. He hired Mr. Property to manage the complex near the end of that month.

Nixon contends that Mr. Property and Brett Davis (for convenience both parties will be referred to as Mr. Property) owed R.M.V. a duty of reasonable care which duty was breached. She further alleged that such breach was a proximate cause of the rape and resulting injuries because this crime was reasonably foreseeable under all the attending circumstances.

The trial court sustained Mr. Property's motion for summary judgment and rendered judgment that Nixon take nothing. In affirming the trial court's judgment, the court of appeals held that, since R.M.V. was on Mr. Property's property without its knowledge and consent, R.M.V. was a trespasser and Mr. Property's duty toward her was no greater than not to injure her willfully, wantonly, or through gross negligence. The court also held that the condition of the apartment complex was not a proximate cause of the rape because R.M.V.'s abduction and rape were not a reasonably foreseeable consequence thereof.

*Summary Judgment*

■ This is an appeal from a summary judgment. The standards for reviewing a motion for summary judgment are well established. As mandated by this court, they are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding

summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984); *Wilcox v. St. Mary's University of San Antonio*, 531 S.W.2d 589, 592–93 (Tex.1975). *See also City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979).

### Duty

■ In this case, the question of what duty Mr. Property owed to R.M.V. is answered by the ordinance. This ordinance legislatively imposes a standard of conduct which we adopt to define the conduct of a reasonably prudent person. *Moughon v. Wolf*, 576 S.W.2d 603, 604 (Tex.1978); *Missouri Pac. R. Co. v. American Statesman*, 552 S.W.2d 99, 103 (Tex.1977). The unexcused violation of a statute or ordinance constitutes negligence as a matter of law if such statute or ordinance was designed to prevent injury to the class of persons to which the injured party belongs. *Id.* A reasonable interpretation of this ordinance is that it was designed to deter criminal activity by reducing the conspicuous opportunities for criminal conduct. In fact, Mr. Property's president testified that one reason vacant apartment units should be secured is to prevent this type of criminal activity. An ordinance requiring apartment owners to do their part in deterring crime is designed to prevent injury to the general public. R.M.V. falls within this class. Since the ordinance was meant to protect a larger class than invitees and licensees, and since R.M.V. committed no wrong in coming onto the property, these premise liability distinctions are irrelevant to our analysis.

■ Using the mandated standard for reviewing summary judgment, we conclude that a genuine issue of material fact exists as to Mr. Property's breach of duty. If the trier of fact concludes that Mr. Property violated the ordinance without a valid excuse, Mr. Property is negligent per se. This does not end our inquiry; we must still determine if there is a material fact issue on the question of proximate cause.

### Proximate Cause

■ A material fact issue exists in this case as to whether Mr. Property's negligence, if any, proximately caused R.M.V.'s injuries. The two elements of proximate cause are cause in fact and foreseeability. *Missouri Pac. R. Co.*, 552 S.W.2d at 103.

■ Cause in fact denotes that the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred. *Id.* Viewing the summary judgment as we must, drawing all reasonable inferences in favor of R.M.V., we conclude that a reasonable inference exists that, but for Mr. Property's failure to comply with the ordinance regarding maintenance of its apartment complex, this crime would have never taken place. There is evidence that the assailant took R.M.V. "directly to a vacant apartment," the inference being that the assailant was acutely aware of the vacant unit's existence and embarked upon his course of criminal conduct at this particular time and place knowing that this unit was an easily accessible place in which to perpetrate this assault in isolation.

The court of appeals misplaced its reliance on *City of Mobile v. Largay*, 346 So.2d 393 (Ala.1977), which had facts similar to ours. In *Largay*, the Alabama Supreme Court placed heavy emphasis on the fact that the assailant used the city's building to commit the rape only as a last resort:

> Clearly, the assailant did not even *intend* to use the building until his first plan to carry the plaintiff away was thwarted when he was unable to start her car. Only when he failed after six or seven attempts to start the car, did he resort to the unlocked cellar.

*Id.* at 395 (emphasis theirs).

■ Finally, we turn to the question of foreseeability. Foreseeability means

that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. *Missouri Pac. R. Co.*, 552 S.W.2d at 103. Usually, the criminal conduct of a third party is a superseding cause relieving the negligent actor from liability. However, the tortfeasor's negligence will not be excused where the criminal conduct is a foreseeable result of such negligence. Texas courts follow this rule. *See Castillo v. Sears Roebuck & Co.*, 663 S.W.2d 60 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.); *Walkoviak v. Hilton Hotel Corp.*, 580 S.W.2d 623 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.).

The RESTATEMENT (SECOND) OF TORTS § 448 (1965) states:

The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, *unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.* [Emphasis added.]

 The evidence is replete with instances of prior violent crimes occurring at Chalmette Apartments. This record certainly provides evidence that further acts of violence were reasonably foreseeable. Evidence of specific previous crimes on or near the premises raises a fact issue on the foreseeability of criminal activity. *See e.g., Walkoviak v. Hilton Hotel Corp.*, (victim of robbery sued hotel; two robberies in the vicinity of hotel in previous year); *Kline v. 1500 Massachusetts Ave. Apartment Corp.*, 141 U.S.App.D.C. 370, 439 F.2d 477 (1970) (victim of assault sued apartment owner; 20 crimes in building in previous year); *Foster v. Winston-Salem Joint Venture*, 303 N.C. 636, 281 S.E.2d 36 (1981) (victim of assault sued mall owner; 29 crimes in mall parking lot in previous year);

*Butler v. Acme Markets, Inc.*, 89 N.J. 270, 445 A.2d 1141 (1982) (victim of assault sued grocery store; seven assaults in parking lot in previous year); *Graham v. M & J Corp.*, 424 A.2d 103 (D.C.App.1980) (arson victims sued duplex owner; numerous previous acts of vandalism in foyer, one prior attempted robbery, high crime area).

In *Trentacost v. Brussel,* 82 N.J. 214, 412 A.2d 436 (1980), the New Jersey Supreme Court affirmed a jury award for an assault victim and against the apartment owner. On the issue of foreseeability, the court stated:

There was ample evidence that criminal activity affecting the Monroe Street building was reasonably foreseeable. More than one witness testified to the high incidence of crime in the neighborhood. Plaintiff's own, unchallenged testimony related an attempted theft within the building. Against this background, the jury could readily view the absence of a lock on the front entrance—an area outside an individual tenant's control—as exemplifying a callous disregard for the residents' safety in violation of ordinary standards of care. Since there was sufficient evidence for concluding that the mugging was a foreseeable result of the landlord's negligence, the jury's finding of liability was warranted.

*Id.,* 412 A.2d at 441.

*Drake v. Sun Bank & Trust Co.,* a case involving a kidnap from a bank parking lot and subsequent murder, is especially instructive on this point. In *Drake,* 377 So.2d 1013 (Ct. of App., Fla.1979), the court held that the widow failed to allege sufficient facts of previous crimes to meet the test of foreseeability, but it remanded to allow her to amend. When the case was again appealed, 400 So.2d 569 (Ct. of App., Fla.1981), the court said allegations that the bank was in high crime area including allegations of similar crimes on or near the facility were sufficient to state a cause of action for negligence.

 Although there is no evidence that previous rapes had occurred at Chalmette Apartments, this is not a prerequi-

site to finding a material fact issue on foreseeability.

> [I]t is not required that the particular accident complained of should have been foreseen. All that is required is "that the injury be of such a *general character as might reasonably have been anticipated;* and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen." [Cite omitted.]

*Carey v. Pure Distributing Corp.*, 133 Tex. 31, 124 S.W.2d 847, 849 (1939) (emphasis added). With a litany of prior crimes, including other violent and assaultive crime, at Chalmette Apartments, and with deposition testimony that vagrants frequented the area, a material fact question exists on the foreseeability of this crime as it relates to the proximate cause issue.

We reverse the judgments of the courts below and remand the cause to the trial court for trial on the merits.

SPEARS and KILGARLIN, JJ., concur with opinions.

McGEE, J., dissents with opinion in which WALLACE and GONZALEZ, JJ., join.

KILGARLIN, Justice, concurring.

I agree with the result reached by the court. However, I regret that the court has chosen to avoid consideration of the premise liability doctrine by opting for an easier path of relying on a city ordinance for the duty determination. Given an opportunity to render impotent one of the last vestiges of feudalism in our common law, we nevertheless succumb to the blandishments of judicial torpidity. In doing so, we carve but another modification to the already exception-ridden premise liability doctrine. Rather than relying on the happenstance of city actions and other judicially sculpted exceptions, I would case aside doctrinal distinctions as the primary determinative of a landowner's liability and substitute a general duty of ordinary care under the circumstances.

The present law of landowner liability has its origins in the feudal period when a man's worth was measured by his property. A landowner was then sovereign within his domain and had total liberty to do with his land as he pleased. F. Bohlen, *Studies in the Law of Torts* 163 (1926). In the nineteenth century, before tort principles were widely recognized or applied, the English judiciary grew conscious of the danger that landowner immunity posed to community safety; yet the judges were reluctant to leave the liability determination to a jury of potential land entrants. Consequently, the judges created an entrant classification scheme to circumscribe the jury's tendencies to find landowners liable. The Industrial Revolution ushered in a greater number of accidents and the English courts began to apply emerging tort principles to the entrant categorization scheme. Marsh, *The History and Comparative Law of Invitees, Licensees and Trespassers*, 69 L.Q.Rev. 182 (1953); Recent Development, *Torts—Abrogation of Common-Law Entrant Classes of Trespasser, Licensee, and Invitee*, 25 Vand.L. Rev. 623, 624 (1972). These classifications were introduced into the United States over one hundred years ago in *Sweeney v. Old Colony & Newport R.R.*, 92 Mass (10 Allen) 368 (1865). Since that time the majority of American jurisdictions, including Texas, have incorporated the entrant categorization system into substantive tort law.

It is a system capable of producing anomalies that are at once both absurd and harsh. Just picture the court of appeals in this case groping for a designation for a ten year old girl who has been forcibly dragged off the street into an apartment complex. Then, out of obeisance to this outmoded entrant characterization doctrine, that court concluded that little Rhonda was after all a trespasser. 675 S.W.2d at 586. As a trespasser, Mr. Property's duty to her was simply not to willfully injure her. Harsh, yes! Absurd? Substitute the facts but a little, and assume Rhonda was a resident of Chalmette Apart-

ments, dragged out of a hallway into a vacant apartment and thrice raped. Under such a tableau, the whole duty concept changes. Yet, but for an almost irrelevant municipal ordinance, this court would maintain such duty fictions.

The recent trend of the law, which I would join, has been away from basing a landowner's liability on his visitor's artificially determined purpose of entry. England, the progenitor of this feudal vestige, adopted the Occupiers Liability Act of 1957, which imposes upon landowners a "common duty of care" toward all visitors, excluding trespassers. 5 & 6 Eliz. 2, ch. 31 (1957). The United States has been slower to annihilate these archaic distinctions. But, in *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630, 79 S.Ct. 406, 409, 3 L.Ed.2d 550 (1959), the United States Supreme Court recognized the inadequacies of the classifications and refused to extend the system to admiralty. *Id.* at 631, 79 S.Ct. at 410. The Court explained that American courts have carved numerous exceptions to the classification system to mitigate its harshness. The Court acknowledged the system's difficulties:

> [E]ven within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards "imposing on owners and occupiers a single duty of reasonable care in all the circumstances."

*Id.* at 630–31, 79 S.Ct. at 410.

Exceptions to the classification structure are rampant in the jurisdictions which still adhere to this system. *See* Note, *Tort Liability of Owners and Possessors of Land—A Single Standard of Reasonable Care Under the Circumstances Towards Invitees and Licensees*, 33 Ark.L.Rev. 194, 197 (1979). Michigan recognizes an exception for social guests. *Preston v. Sleziak*, 16 Mich.App. 18, 167 N.W.2d 477 (1969).

Kentucky modified the traditional categories by increasing a landowner's duty to known and frequent trespassers on a limited area. *Louisville & N.R. Co. v. Spoonamore's Adm'r.*, 278 Ky. 673, 129 S.W.2d 175 (1939). Texas is no different. In this state, for example, we have excepted from these categorizations attractive nuisances (*Banker v. McLaughlin*, 146 Tex. 434, 208 S.W.2d 843 [1949]); dangerous conditions obvious to the owner (*State v. Tennison*, 509 S.W.2d 560 [Tex.1974]), and anticipated trespassers if the landowner engages in a dangerous activity (*Gulf, C & S.F. Ry. Co. v. Russell*, 125 Tex. 443, 82 S.W.2d 948 [Tex.Comm'n App.1935, opinion adopted]).

In 1968, California became the first state to eradicate common law distinctions of land entrants. That state's supreme court held that landowners would be required to exercise ordinary care under the circumstances regardless of the tort victim's classification. The California court recognized that the entrant's status could affect the liability question but it would only affect liability in determining what "ordinary care under the circumstances" required. The court reasoned:

> A man's life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of another without permission or with permission but without a business purpose. Reasonable people do not ordinarily vary their conduct depending upon such matters, and to focus upon the status of the injured party as a trespasser, licensee, or invitee in order to determine the question whether the landowner has a duty of care, is contrary to our modern social mores and humanitarian values. The common law rules obscure rather than illuminate the proper considerations which should govern determination of the question of duty.

*Rowland v. Christian*, 69 Cal.2d 108, 70 Cal.Rptr. 97, 104, 443 P.2d 561, 568 (1968).

Since *Rowland*, eight other jurisdictions have held that the invitee, licensee, trespasser categories are not determinative,

and that landowners are subject to a duty of ordinary care under the circumstances. Hawaii was the first state to follow California's lead. Holding that there is no logical relationship between the entrant classifications and the exercise of reasonable care for the safety of others, Hawaii abolished the outdated trinity in *Pickard v. City and County of Honolulu,* 51 Hawaii 134, 452 P.2d 445 (1969). Colorado was the next state to institute a standard of reasonable care under the circumstances to avoid harsh results and judicial confusion. *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971). The District of Columbia soon joined those states casting out the archaic troika. *Smith v. Arbaugh's Restaurant,* 152 U.S.App.D.C. 86, 469 F.2d 97, *cert. denied,* 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 399 (1973). Five years later, five other states had also concluded that the entrant classification scheme was no longer viable. *See Mariorenzi v. Joseph DiPonte, Inc.,* 114 R.I. 294, 333 A.2d 127 (1975); *Cates v. Beauregard Electric Cooperative, Inc.,* 328 So.2d 367 (La.), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976); *Ouellette v. Blanchard,* 116 N.H. 552, 364 A.2d 631 (1976); *Basso v. Miller,* 40 N.Y.2d 233, 386 N.Y.S.2d 564, 352 N.E.2d 868 (1976); and, *Webb v. City and Borough of Sitka,* 561 P.2d 731 (Alaska 1977). Six jurisdictions have applied a uniform standard of care for invitees and licensees while excluding trespassers. *See Peterson v. Balach,* 294 Minn. 161, 199 N.W.2d 639 (1972); *Wood v. Camp,* 284 So.2d 691 (Fla. 1973); *Mounsey v. Ellard,* 363 Mass. 693, 297 N.E.2d 43 (1973); *Antoniewicz v. Reszcyniski,* 70 Wis.2d 836, 236 N.W.2d 1 (1975); *O'Leary v. Coenen,* 251 N.W.2d 746 (N.D.1977); *Poulin v. Colby College,* 402 A.2d 846 (Me.1979). True, many states have rejected abandonment of premise liability standards, but only fourteen states have done so by decisions from their courts of last resort.

In casting aside the premise liability classification, the United States Court of Appeals for the District of Columbia placed heavy reliance on the decreased prestige of the landowner in our society. The court said:

> We believe that the common law classifications are now equally alien to modern tort law, primarily because they establish immunities from liability which no longer comport with accepted values and common experience. Perhaps the protection afforded to landowners by these rules was once perceived as necessary in view of the sparseness of land settlements, and the inability of owners to inspect or maintain distant holdings. The prestige and dominance of the landowning class in the nineteenth century contributed to the common law's emphasis on the economic and social importance of free use and exploitation of land over and above the personal safety of those who qualified as trespassers or licensees.

*Smith v. Arbaugh's Restaurant, Inc.,* 469 F.2d at 101. That court also recognized the importance of resource allocation in our society and decided that, absent legislative action, the jury is in the best position to allocate society's resources regarding personal injury. Classifying landowner liability decisions as "moral and empirical judgments," the court reasoned that the community representatives which comprise the jury are best qualified to handle these questions. *Id.* at 102.

Resource allocation was only one of the bases for that court's destruction of the land entrant categories. The court also relied on the genius of the common law to adapt to societal, economic and moral changes:

> Legal classifications such as trespasser and licensee are judicial creations which should be cast aside when they are no longer useful as controlling tools for the jury. The principle of stare decisis was not meant to keep a stranglehold on developments which are responsive to new values, experiences, and circumstances. In our opinion, the time has come to put an end to our total reliance on these common law labels and to allow the finder of fact to focus on whether the landowner has exercised "reasonable care under all the circumstances." That stan-

554

dard contains the flexibility necessary to allow the jury to take account of the infinite variety of fact situations which affect the foreseeability of presence and injury, and the balance of values which determines the allocation of the costs and risks of human injury.

*Id.* at 105.

Rather than create further refinements and exceptions to the premise liability doctrine, we should abolish it. The classifications of invitee, licensee and trespasser are judicial dinosaurs which served a purpose long ago when society's values placed great emphasis on a man's property holdings. That day is gone, and with it the public-be-damned attitude of J.P. Morgan. Today's society places a great emphasis on human safety. In accommodating this modern trend, however, I do not advocate that trespassers who enter with an intent to commit a crime be allowed to recover and would hold that a landowner as a matter of law has no duty to such a trespasser other than as currently exists.

This case presents a perfect opportunity for casting aside one of the last remnants of a doctrine whose roots are founded in the feudal system and which has no place in our modern society. This court should follow the modern trend and abolish this antiquated doctrine. For the above reasons, I respectfully concur.

SPEARS, Justice, concurring.

I concur in the judgment of the court, but I would not hinge the duty owed to R.M.V. only on the ordinance. In my view Mr. Property's duty to R.M.V. should not depend solely on the existence of an ordinance or the location of the apartments within city limits.

I would be willing to carve an exception to the traditional premises liability categories of invitee, licensee, and trespasser because the categories should not be applied rigidly. Although R.M.V. entered the Chalmette apartment complex without Mr. Property's consent or knowledge, it would be manifestly unjust to classify her as a trespasser when she was dragged onto the property by a rapist. I would hold that Mr. Property must act as a reasonable prudent person in maintaining its property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden on the respective parties of avoiding the risk. By establishing a duty under these circumstances, Mr. Property would not be an insurer of its property or have to face unreasonable burdens in maintaining its property.

I am not ready to discard the traditional categories of invitee, licensee, and trespasser because they allow judicial certainty and predictable allocations of liability in most cases. Adoption of an across-the-board standard of reasonable care under the circumstances would replace a stable and established system of loss allocation with confusion and possibly inconsistent and unpredictable rules of law. I am not sure that juries can be expected to reconcile the multitude of social policies implicit in the assessment of premises liability. Without the guidance of the categories, juries would be given a free hand to impose liability without reference to the social policies underlying the categories; and, if the jury is to be instructed to consider the former categories, we gain little or nothing by jettisoning them. *Gerchberg v. Loney,* 223 Kan. 446, 576 P.2d 593, 597 (1978). I am not alone in this position. A clear majority of the states have refused to abandon the common-law status classifications of invitee, licensee, and trespasser. Annot., 22 A.L.R.4th 294 (1983).

The court has decided this case without creating a new exception to traditional premises liability categories or abandoning them in favor of a reasonable care under the circumstances test. By hinging the duty owed to R.M.V. on the ordinance, the court has not foreclosed either an exception to or abandonment of the traditional categories in the future. I would retain the categories until we can evaluate the ramifications of adopting the single standard of care in light of the results experienced by states which have adopted such a standard.

McGEE, Justice, dissenting.

There were four defendants in the trial court. The suit against Landmark Apartments and its management company has been settled. The question in this cause is whether the Chalmette Apartments and Mr. Property Management Company may be held liable for the rape of a minor originating at the Landmark Apartments, but accomplished in a vacant unit of the Chalmette Apartments. The question is answered by determining whether the alleged negligence of the Chalmette Apartments and Mr. Property was a proximate cause of the injury. I would hold that the rape of R.M.V. was not proximately caused by any act or omission of these defendants as a matter of law. Rather, the criminal conduct of an unknown person in this case was unforeseeable, and a superseding cause. Therefore, I dissent.

### CAUSE IN FACT

The two elements of proximate cause are cause in fact and foreseeability. *Clark v. Waggoner*, 452 S.W.2d 437, 439 (Tex.1970). In *Kerby v. Abilene Christian College*, 503 S.W.2d 526 (Tex.1973), this court adopted a "but for" test to determine cause in fact. Under *Kerby*, the alleged negligence is not a cause in fact unless "but for the conduct the accident would not have happened." 503 S.W.2d at 528.

The majority's analysis of cause in fact is premised on the fact that R.M.V. was taken "directly to a vacant apartment at the Chalmette Apartments." The majority views *City of Mobile v. Largay*, 346 So.2d 393 (Ala.1977), as a cause in fact case. The majority states that in *Largay*, the assailant did not take Largay directly to the city museum. It is upon this basis that the majority attempts to distinguish *Largay*. I find *Largay* indistinguishable and would follow it in the present cause.

In *Largay*, the plaintiff was abducted on a public street beside a vacant city museum. As Largay was leaving her car, an unknown man approached her, pulled a knife, and forced her back into her own car. The assailant attempted to start the car

and subsequently "dragged her down the sidewalk and through an open cellar door into the vacant city museum building owned by the City of Mobile." 346 So.2d at 394. The *Largay* court did not place "heavy emphasis" on the assailant's use of the building as a last resort. Indeed, the case did not, and could not, turn on the unknown subjective intent of the assailant. Rather, the *Largay* court based its opinion on foreseeability and held "as a matter of law, that the use of the unlocked cellar for perpetration of rape was *not* a reasonably foreseeable consequence of the City's failure to maintain the building." 346 So.2d at 395. (Emphasis in original). Thus, the facts and reasoning of *Largay* recognize that the occurrence of the rape in the city museum was unforeseeable.

Although *Largay* is premised on foreseeability and cause in fact was not discussed, I view *Largay* as support for the position that the alleged negligence of the Chalmette Apartments was not a cause in fact of the rape. *Largay* and the case at bar are distinguished from numerous other cases in that both plaintiffs were dragged onto the premises. In *Largay*, the rapist, having failed to abduct the plaintiff or consummate the crime in the plaintiff's car, merely utilized the nearest available instrumentality. In the event that the city museum had been locked, the rape could have occurred in a temporarily unoccupied automobile, business, or unfenced vacant lot.

*Largay* is squarely on point with the case at bar in that here, had the rape not occurred in a vacant unit of the Chalmette Apartments, the nearest available place of solitude would have afforded a suitable location for the crime. Had R.M.V. been abducted from a private apartment building and dragged into an unlocked city pickup truck, would the City of Dallas be liable for the rape? Had R.M.V. been abducted from a city street and dragged into an unlocked private garage, would the landowner be liable for the rape? Had R.M.V. been abducted from a neighborhood store and dragged to a neighbor's backyard, would the neighbor be liable? I think not.

A missing or unlocked door at the Chalmette Apartments was not a cause in fact of R.M.V.'s rape. Under the facts presented here, the criminal's fortuitous choice of venue is not sufficient to satisfy the "but for" test announced in *Kerby*.

## FORESEEABILITY

I would also hold that the rape was not a foreseeable result of the alleged failure to maintain a properly secured door on a vacant unit of the Chalmette Apartments. RESTATEMENT (SECOND) OF TORTS § 448 (1965), provides that an intentional tort or crime is not a superseding cause if "the actor at the time of his negligent conduct *realized* or *should have realized* the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime." The majority cites *Castillo v. Sears Roebuck & Co.*, 663 S.W.2d 60 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.); and *Walkoviak v. Hilton Hotel Corp.*, 580 S.W.2d 623 (Tex.Civ.App. —Houston [14th Dist.] 1979, writ ref'd n.r. e.), for the broad proposition that a tortfeasor's negligence is not excused in the case of foreseeable criminal conduct. I do not agree with the majority's statement that "Texas courts follow this rule," or Restatement § 448 in a case such as this.

In *Castillo*, the plaintiffs were approached in a Sears store, told to step outside, and assaulted on the parking lot. The *Castillo* opinion was not based on Restatement § 448. Rather, the court focused on the duty owed to the public by a possessor of land who holds the premises open to the public for business purposes. RESTATEMENT OF TORTS (SECOND) § 344 (1965). Indeed, the *Castillo* court expressly refused to impose liability based on section 344:

> [I]t is our opinion that it would be patently unfair and unjust to impose the vague duty of section 344, RESTATEMENT OF TORTS (SECOND) (1966) on the shopkeepers and merchants of Texas to exercise reasonable care to discover the sudden criminal acts of unknown and unidentified persons....

663 S.W.2d at 66. In *Walkoviak*, the plaintiff was assaulted in the parking lot of the Shamrock Hilton Hotel. The suit was premised on Restatement § 344 and the innkeeper's alleged failure to supply adequate security protection or guards. 580 S.W.2d at 625. *Morris v. Barnette*, 553 S.W.2d 648, 649 (Tex.Civ.App.—Texarkana, 1977, writ ref'd n.r.e.), and *Eastep v. Jack-in-the-Box, Inc.*, 546 S.W.2d 116 (Tex.Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.), are also both grounded on section 344. Our courts of appeals are split on the question of whether a landowner, under section 344, has a duty to foresee and guard against criminal conduct occurring on the premises. In addition, this court has never recognized the application of either section 344 or section 448. Therefore, liability due to the criminal acts of unknown third persons is far from the settled rule of law which the majority suggests.

The distinction between liability based on sections 344 and 448 is significant. Under section 344, the innkeeper or business owner who throws his premises open to the public has a higher duty to exercise reasonable care because of the purpose for which the public has entered. It is a significant extension to hold that under section 448, a landowner may be held liable if he fails to foresee and guard against criminal attacks originating off the premises, but accomplished on the landowner's property. Indeed, section 448 is not limited to landowners, but by its express terms applies to any negligent tortfeasor. I would refuse to apply section 448 in this cause because, assuming that it should be adopted, the criminal attack on R.M.V. was unforeseeable as a matter of law.

Under Restatement § 448, liability is imposed only if the actor (1) realized, or (2) should have realized the likelihood of the commission of an intentional tort or crime by a third person. Under the facts of this cause, neither the *realized* nor *should have realized* prong of Restatement § 448 has been met.

The first prong of section 448 has not been met because there is no showing in the record that the Chalmette Apartments actually *realized* the possibility of a rape occurring on its premises because of its knowledge of other specific instances of crime. The president of Mr. Property stated in a deposition that he was not aware of any specific reported instances of crime in the Chalmette Apartments. Davis, the owner of Chalmette Apartments, stated that he was not aware of any criminal activity, rapes, assaults, or burglaries occurring at the Chalmette Apartments prior to the rape of R.M.V. Neither the apartment owner nor manager had knowledge of other instances of crime from which they realized the possibility of rape. Therefore, the first prong of Restatement § 448 cannot be the basis for liability in this cause.

Thus, the foreseeability issue in this cause is reduced to an analysis of the second prong of Restatement § 448. *Should* the Chalmette Apartments have realized the possibility that a young girl would be abducted off the premises, dragged into a vacant apartment, and raped?

The majority assigns "deposition testimony that vagrants frequented the area" as one of the two reasons for the existence of "a material fact question ... on the foreseeability of this crime." I find the evidence presented in *City of Mobile v. Largay* to be much more compelling than the facts of the present cause. In *Largay*, the court stated that

> [t]here was some testimony which indicated that prior to this incident the building had been broken into on several occasions. According to other testimony, "winos" and derelicts slept in the cellar area of the building; wine and whiskey bottles littered the area in and around the building; and cars parked in the vicinity of the building had been broken into. Photographs [demonstrated the] state of disrepair.

346 So.2d at 394. However, in spite of these facts, the *Largay* court held that no "reasonable inference in support of plaintiff's case on the issue of proximate cause"

was established as a matter of law. *Id.* at 395. I agree with the *Largay* court that this evidence does not raise a fact issue on foreseeability.

The second reason relied on by the majority for the existence of a fact question is the occurrence of numerous instances of prior violent crime at the Chalmette Apartments. The majority states that the rape in the present cause was foreseeable because in the two years prior to the rape of R.M.V., "one attempted murder, two aggravated robberies, two aggravated assaults, sixteen apartment burglaries, four vehicle burglaries, four cases of theft, five cases of criminal mischief, and one auto theft" occurred at the Chalmette Apartments. Deposition testimony shows that the Chalmette Apartments were purchased by Davis in March of 1981. Mr. Property assumed management of the complex on March 27, 1981. Crimes which occurred prior to the purchase and assumption of management cannot possibly be imputed to these defendants so as to put them on notice of the possible rape of R.M.V. Can it be said that through the purchase of a home or building, a landowner is on notice of every crime occurring on the premises since the date of construction? Under the majority's analysis, the owner is chargeable with such knowledge, and therefore may be held liable for a crime occurring years later on the same premises.

I view the majority opinion as unsupportable, and indeed, the majority can cite no case which supports the proposition that knowledge of crimes occurring before purchase may be imputed to the present landowner. Therefore, the majority analysis is fundamentally flawed in failing to recognize the indisputable proposition that the only crimes relevant in this cause are those occurring after the purchase of the Chalmette Apartments in March, 1981. Taken in proper context, the record reflects that the majority's "litany of prior crimes, including other violent and assaultive crime" is reduced to only one "assault," four property related burglaries, and one case of criminal mischief.

The "assault" involved a dispute between common law spouses in which the husband kicked and choked the wife, causing minor scrapes and scratches to the body. The wife refused to press charges. The case of criminal mischief involved the removal of a mailbox door. As a result of the burglaries, a total of five television sets, four stereos, two radios, one clock, and one telephone were stolen from residents of the Chalmette Apartments. With the exception of the intra-family "assault," not one of the crimes which occurred after March of 1981 was even remotely concerned with bodily harm. All were non-assaultive, property related crimes. No rapes, murders, robberies, aggravated assaults, muggings, or other violent conduct indicating a likelihood of future personal harm occurred on the premises.

Applying the majority's own test, as set out in *Carey v. Pure Distributing Corp.,* 133 Tex. 31, 35, 124 S.W.2d 847, 849 (1939), the "general character" of this violent crime could not "reasonably have been anticipated" as a result of property crimes or domestic disputes. Property crimes and domestic disputes are not of the same general character as a rape. Murders, rapes, aggravated assaults, assaults, robberies, or other violent crime between non-family members are crimes of the same general character as the rape of R.M.V. If evidence of other violent crimes was included in 'the summary judgment proof, I might agree that a fact question for the jury would exist under *Carey.* However, there is no evidence of other crimes of the same general character as the rape of R.M.V.

We have held that the non-movant, in order to overcome a motion for summary judgment due to the nonexistence of a material fact "must present summary judgment proof when necessary to establish a fact issue." *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979). It was "necessary" for the plaintiff to offer summary judgment proof in this cause establishing a fact issue on foreseeability. The plaintiff was under a duty to raise a fact issue through evidence of the existence of other crimes of the same general character as the rape of R.M.V. No such evidence was offered. Viewing the plaintiff's evidence in the light most favorable to her, I find it impossible to think that because of the occurrence of a domestic dispute and non-violent property crimes, the Chalmette Apartments should have realized the possibility that a violent rape might originate off the premises, but be accomplished in a vacant apartment unit. Foreseeability does not exist in this cause as a matter of law. The trial court correctly granted the motion for summary judgment filed by the Chalmette Apartments and Mr. Property.

The majority opinion sets dangerous precedent and shuns legal support in holding that the plaintiff is entitled to a jury trial. Therefore, I reject the majority's result, as well as the rationale underlying it. Under the majority opinion, the Chalmette Apartments and Mr. Property are forced to defend a lawsuit because the plaintiff has been criminally assaulted in a vacant apartment unit. In future cases which are similar to the present cause, the plaintiff need only offer proof of repeated incidents of shoplifting, theft, or other property crime in order to overcome a motion for summary judgment. This is the evidence offered in the present cause. The crimes need not occur at a time when the defendant owned the property. The crimes need not be of the same general character as that perpetrated upon the plaintiff. Under the majority opinion, any crime occurring on the premises is competent summary judgment evidence. The majority opinion does great violence to our summary judgment practice under Rule 166–A and I fear the implications. In *Clear Creek,* this court stated that "[t]he pre-1978 summary judgment rule had a chilling effect on the willingness of trial courts to utilize the intended benefits of the procedure.... The new rule attempts to encourage the trial court to utilize the summary judgment in appropriate cases." 589 S.W.2d at 676. The majority opinion will discourage rather than encourage the use of summary judgments in appropriate cases such as the one

before us. I cannot agree with such an analysis in the present cause. I will not agree with the majority's analysis in the many cases which will follow from it.

Not one of seven cases cited by the majority is on point or in support of its position. No case cited by the majority deals with an off-premises abduction of the plaintiff. No case cited by the majority is premised on Restatement § 448. No case deals with the inference of foreseeable violent crime merely because of the occurrence of prior nonviolent property crimes and domestic disputes. No such cases are cited by the majority because *City of Mobile v. Largay,* the only case which can be cited, stands squarely against the majority's position that this attack was foreseeable.

The majority does cite *Walkoviak* as an example of a case where two robberies in the vicinity of the hotel established the foreseeability of criminal activity. However, the majority overlooks additional facts presented in *Walkoviak.* The *Walkoviak* court specifically noted that because the two "victims came or were brought to the hotel for help, the hotel was then aware of facts" which gave the hotel specific knowledge of past crimes, and therefore, made the hotel aware of the likelihood of future crime on the premises. 580 S.W.2d at 626. Thus, *Walkoviak,* as well as four other cases cited by the majority are all based on the landowner's actual knowledge of specific instances of crime in the past. *See Kline v. 1500 Massachusetts Avenue Apartment Corp.,* 439 F.2d 477, 479 (D.C.Cir.1970) ("The landlord had notice of these crimes and had in fact been urged by appellant Kline herself prior to the events leading to the instant appeal to take steps to secure the building."); *Foster v. Winston-Salem Joint Venture,* 303 N.C. 636, 281 S.E.2d 36, 40 (1981) ("Defendants acknowledged that these incidents had been reported and that they were aware of them."); *Trentacost v. Brussel,* 82 N.J. 214, 412 A.2d 436, 439 (1980) (plaintiff at other times "had notified the landlord of the presence of unauthorized persons in the hallways. Plaintiff claimed the defendant had promised to install a lock on the front door...."); and *Graham v. M & J Corp.,* 424 A.2d 103, 105–06 (D.C.App.1980) ("The tenants frequently complained to the landlord about the absence of an outer door lock. They explained to the rental agent that intruders and strangers entered the foyer through the open door and committed acts of vandalism ... [plaintiff] told the rental agent of an attempted burglary through her window."). In cases where the landowner has actual knowledge, fewer criminal acts of the same general character will suffice to make the landowner aware of the likelihood of a criminal assault. In this cause we do not have actual knowledge of criminal acts. We do not have crimes of the same general character as a rape. We have no crimes from which these defendants should have realized the possibility of rape. Therefore, these cases simply have no application in an analysis of the facts of this cause.

In *Drake v. Sun Bank & Trust Co.,* 400 So.2d 569 (Fla.Ct.App.—1981), the court merely stated that because of other similar crimes occurring on the property, the landowner should have known of the chance of an assault against a customer on the premises. *Drake* is not "instructive" on the point of foreseeability because the court did not state the number of other crimes, the frequency of occurrence, the type or general character of crimes, nor how long the criminal acts had been occurring on the property.

In *Butler v. Acme Markets, Inc.,* 89 N.J. 270, 445 A.2d 1141 (1982), the court held that an assault on the plaintiff was foreseeable when five muggings were committed during the preceding four months. However, the facts presented in *Butler* are far from the facts presented in the instant cause. The assault suffered by the plaintiff in *Butler* was of the same general character as the muggings previously occurring on the premises. Therefore, the assault in *Butler* was foreseeable because the past history of muggings made a future mugging probable and predictable, not merely conceivable or possible.

**560**

Any injury suffered by a member of our society may be said to be possible. Yet, in order for an injury to be compensable, it must to a degree be said to be the probable result of a negligent act or omission of the defendant. Indeed, the difference between an injury which to some degree is probable and one which is merely possible is the difference between liability and exoneration from liability. The facts in this cause demonstrate that it is possible for a young girl to be abducted, dragged across a public street, and raped in a vacant unit of the Chalmette Apartments. However, I would hold that this possibility was not to any degree a probable consequence of the alleged failure to secure an apartment door. The Chalmette Apartments should not have realized the likelihood of rape merely because of the occurrence of a domestic dispute and five prior property crimes.

I would adhere to the foreseeability analysis set out by the court in *City of Mobile v. Largay*, 346 So.2d 393 (Ala.1977). The *Largay* court held that the criminal assault was unforeseeable as a matter of law. The criminal conduct of an unknown assailant in this cause was also unforeseeable as a matter of law. The injury to R.M.V. was neither caused in fact nor a foreseeable result of the alleged negligence of these defendants. I would hold that proximate cause was disproved as a matter of law because the criminal assault by an unknown assailant was a superseding cause.

I would affirm the judgments of the trial court and court of appeals.

WALLACE and GONZALEZ, JJ., join in this dissenting opinion.