**Murry Kevin JANUARY, Ind. and on Behalf of all Statutory Beneficiaries, Appellant,**

v.

**Billy Jack PEACE and Behren's Drug Wholesale, Appellees.**

No. 12–87–0025–CV.

Court of Appeals of Texas, Tyler.

Sept. 28, 1987.

Rehearing Denied Nov. 6, 1987.

Mr. Gerald Livingston, Livingston & Hundley, J. Thomas Sullivan, SMU School of Law, Dallas, for appellant.

Jerry C. Parker, Sammons & Parker, Charles H. Clark, Tyler, for appellees.

COLLEY, Justice.

In this summary judgment case, the trial court granted separate summary judgments in favor of defendants/appellees Billy Jack Peace and Behren's Drug Wholesale, decreeing that plaintiffs/appellants Murry Kevin January, Jason Verdell January, Ramon Ivy and Beatrice Ivy take nothing by their wrongful death and survival action[1] based on alleged statutory and common-law negligence. We affirm.

The appellants contend the court erred in granting the summary judgment as to each appellee because material issues of fact exist as to whether appellees were guilty of negligence or negligence per se.[2]

The record shows without dispute that on November 5, 1982, appellee Billy Jack

---

1. Under Tex.Civ.Prac. & Rem.Code Ann. §§ 71.-001–.004; § 71.009; and § 71.021.

2. Because of violations of Tex.Agric.Code Ann. §§ 76.071(a), 76.105(a)(b)(c), 76.116(a)(2)(4)(8), 76.201(d)(1)(2) and 7 U.S.C.A. §§ 136a(d)(C), 136(e)(1)(2), 136j(a)(1)(F)(G), 136(u)(1), 136v(a), 136w(c)(2), 136w–1(a)(1), 136l(a)(1)(b)(1).

Peace, a licensed pharmacist and owner of Peace Drug Store in Canton, received a telephone call from Murry Hugh January. January, a regular customer of Peace, requested some strychnine for the avowed purpose of killing wolves. January told Peace that he had been having problems with wolves attacking his cattle while they were calving. Appellee Peace advised January that he didn't have the poison in stock, but told January he could contact Tyler area farm and ranch stores or a particular pharmacy in Tyler and procure the strychnine. Later the same day January called Peace back and reported that he had been unable to secure the strychnine; whereupon Peace, according to his testimony, concluded that January wanted the strychnine "immediately" to prevent further loss of livestock. Peace, in order to accommodate his customer January, called appellee Behren's Drug at their Tyler wholesale warehouse and arranged with Ben Scott (Behren's division manager) for January to go to the warehouse and pick up a quantity of the poison. According to the testimony of Scott, the poison was delivered to January in person but charged to the account of a Grand Saline pharmacy owned by Peace. Peace also related in his affidavit the following:

> At no time during my conversations with Murry Hugh January, Ben Scott or anyone else, did I ever have any idea that Murry January was going to in some way use the strychnine purchased as outlined above to harm, injure, or kill his wife. There were no circumstances, inferences, statements or any other actions by any party that would have in any way led me to believe Murry Hugh January would use the strychnine for that reason. No statement, act or conduct in any way suggested that the strychnine would be used for any other purpose than to kill the wolves that were attacking Mr. January's cattle as he had reported to me in the telephone conversation.

Scott testified by deposition that he was not acquainted with January before the purchase, and that he had no prior dealings with him. He also stated that he and January did not even discuss January's professed need for the strychnine.

No summary judgment evidence was offered by appellants. However, in their response to appellees' motions for summary judgment, appellants allege that the appellees failed to negate appellants' allegation that appellees violated section 76.201 and other sections of the Texas Agriculture Code in making the sale of the substance to January. Appellants also contended that proximate cause is a fact question unless the facts and circumstances of the case are such that reasonable minds could not differ as to its existence or nonexistence.

Even in the absence of a response from the opposite party, a defendant-movant in a summary judgment case has the burden to establish as a matter of law that he is entitled to the summary judgment he seeks. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). He may discharge that burden by conclusively negating one or more of the essential elements of a plaintiff's cause of action as framed by the plaintiff's pleadings. *Id.*

Appellants allege in their first amended original petition that after January obtained the strychnine from "Peace ... and ... [Behren's] ... Murry Hugh January did cause the same to be ingested by his wife Deloris Faye January ... from which poison, after a period of intense and conscious physical pain and mental suffering she died [3] on November 13, 1982." Following these allegations of fact, appellants further allege in Paragraph VI of their petition "that [appellees] and each of them by assisting [January] to obtain the strychnine contrary to the provisions of [federal and state law and the regulations of the Environmental Protection Agency of the United States] were guilty of negligence per se which was a direct and proximate cause of the death of Deloris Faye January...." Additionally, appellants allege in

**3.** January was convicted of his wife's murder on July 13, 1983, in the 7th Judicial District Court, Smith County, Texas.

Paragraph VII of the petition specific acts and omissions on the part of Peace as follows:

1. In failing to inform himself as to the prohibitions placed on the use of strychnine.

2. In failing to determine that Murry Hugh January was not a certified applicator of strychnine under the Texas "Code."

3. In assisting Murry Hugh January to obtain strychnine in the form and quantity concerned in this cause.

4. In selling Murry Hugh January strychnine when Billy Jack Peace, Defendant was not a licensed dealer as required by sec. 76.071 of the Texas "Code."

5. In failing to inform Behren's Drug Wholesale, Defendant, of the use to which Murry Hugh January stated he intended to make of the strychnine.

6. In distributing strychnine to an uncertified applicator as such users are required to be under the Texas "Code."

7. In aiding Murry Hugh January to evade the provisions of the Texas "Code" in obtaining strychnine from Behren's Drug Wholesale, Defendant, contrary to sec. 76.201 and sec. 76.116 of the Texas "Code."

Thereafter in Paragraph VIII of the petition appellants allege specific acts and omissions on the part of appellee Behren's as follows:

1. In failing to inform, train or instruct its agents, servants or employees as to the prohibitions placed on the distribution and/or use of strychnine under FIFRA, the Texas "Code" and the orders of the EPA.

2. In supplying or distributing strychnine to a person who was not a certified applicator as required under the Texas "Code."

3. In selling strychnine to a person who was not a licensed dealer as required under the Texas "Code."

4. In failing to determine that Billy Jack Peace, Defendant, was not a licensed dealer, as required under the Texas "Code."

5. In failing to determine that Murry Hugh January was not a certified applicator as required of users under the Texas "Code."

6. In failing to inform Billy Jack Peace, Defendant that the use to which Murry Hugh January stated he intended to put the strychnine was contrary to government order and labelling restrictions and unlawful under "FIFRA" and "EPA" order.

7. In aiding Murry Hugh January to evade the provisions of the Texas "Code" in obtaining the strychnine contrary to sec. 76.201 and sec. 76.116 of the Texas "Code."

8. In supplying strychnine in the form and quantity concerned in this cause to Murry Hugh January without inquiry into his intended use thereof as a reasonable person under the same or similar circumstances would have done.

At the foot of Paragraphs VII and VIII appellants allege that each and every of the alleged specific acts or omissions on the part of each appellee constituted "negligence per se and/or negligence at common law and a direct and proximate cause of the death of Deloris Faye January ... [and plaintiffs' damages]."

For the purpose of this opinion we assume, without deciding, that the summary judgment evidence does not establish, as a matter of law, that appellees were not guilty of acts or omissions constituting common-law negligence or negligence per se alleged by appellants, and turn directly to consider whether the summary judgment evidence conclusively establishes that appellees' negligence was not a proximate cause of the death of Deloris Faye January.

In *Missouri Pac. R. Co. v. American Statesman*, 552 S.W.2d 99, 103 (Tex.1977),[4] the Court reiterated a long-standing rule that whether an act or omission sued on constitutes either common-law negligence or negligence per se, no liability attaches to that negligence unless it is the proximate

---

**4.** Cited in *Nixon v. Mr. Property Management*      *Co., Inc.,* 690 S.W.2d 546, 547–550 (Tex.1985).

cause of the injuries sustained. That court also reaffirmed that "proximate cause" includes "two elements: (1) cause in fact and (2) foreseeability." (Citations omitted.) The *Missouri Pac. R. Co.* court defined "cause in fact" to mean "that the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred." (Citation omitted.) That court defined "foreseeability" in the following language:

Foreseeability is satisfied by showing that the actor as a person of ordinary intelligence should have anticipated the danger to others by his negligent act. Foreseeability does not require that the actor anticipate just how the injury will grow out of the particularly dangerous situation. An act wanting in ordinary care which actively aids in producing an injury as a direct and existing cause *need not be the sole cause;* but it must be a concurring cause and such as might reasonably have been contemplated as contributing to the result under the attending circumstances. It matters not what the actor believed would happen, but whether he ought to have reasonably foreseen that the event in question, or some similar event, would occur. (Emphasis in original.) (All citations omitted.)

In *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546 (Tex.1985), a ten-year-old female child was abducted while on the outside of an apartment complex located across the street from Chalmette Apartments. Her attacker forced her to walk across the street, taking her immediately to a vacant unit in the Chalmette Apartments where he sexually assaulted her. The assailant gained entry to the unit easily because the front door was "off its hinges." The victim's mother brought suit individually and as next friend for her child against the owner and manager of the Chalmette Apartments based on negligence per se.[5] In *Nixon,* the court quoted a passage [6] from *Carey v. Pure Distributing Corp.,* 133 Tex. 31, 124 S.W.2d 847 (1939), addressing the substance of "foreseeability," reading:

[I]t is not required that the particular accident complained of should have been foreseen. All that is required is 'that the injury be of such a *general character as might reasonably have been anticipated;* and that the injured party should be so situated with relation to the wrongful act that the injury to him or to one similarly situated might reasonably have been foreseen.' (Citation omitted.) (Emphasis supplied by *Nixon* court.)

Chief Justice Hill, writing for the majority in *Nixon* immediately following the above quotation, applied the principle embodied therein and wrote:

With a litany of prior crimes, including other [other than rape] violent and assaultive crimes, at Chalmette Apartments, and with deposition testimony that vagrants frequented the area, a material fact question exists on the foreseeability of this crime [rape] as it relates to the proximate cause issue.

In *Nixon* the summary judgment evidence showed that the negligent actors had prior knowledge of the "litany of prior crimes" occurring at the apartments where the rape of the child occurred. Unlike *Nixon,* the summary judgment evidence offered by appellees shows that neither Peace nor Scott had knowledge of any facts even remotely suggesting that January, at the time of his purchase of the poison,[7] had any motive to injure or murder his wife or any other person. The evidence shows that January was a stranger to Scott at the time of the sale, and Peace's affidavit testimony states in effect that he had

---

5. Violation of a city ordinance requiring landowners "to keep the doors and windows of a vacant structure or vacant portion of a structure securely closed to prevent unauthorized entry."

6. Which includes a quote from *San Antonio and A.P. Ry. Co. v. Behne,* 231 S.W. 354, 356 (Tex. Comm'n App.1921, judgmt adopted).

7. Thus affording January a mere opportunity to administer the poison to his wife or other persons. *See Restatement (Second) of Torts* § 448 (1965), *Nixon* at 550.

no knowledge of any facts calculated to induce a belief that January had intentions to administer the poison to his wife or any other person. In fact, January informed him that wolves were killing his cows or new born calves and he wanted the strychnine to poison the wolves before more cattle were lost.

Appellants ably argue that the summary judgment evidence did not conclusively negate the existence of the factual foreseeability issues, claiming that January communicated an "urgency" in his need for the substance. However, the so-called "urgency" of his request for the strychnine is clearly explained by the evidence to be premised on his concern that more of his cattle would be lost to the predators.

In this case, after appellees submitted their summary judgment evidence, appellants had the burden of presenting summary judgment evidence to raise fact issues respecting proximate cause, including the foreseeability issue. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678–679 (Tex.1979). This they failed to do.

We conclude therefore, upon a careful consideration of the pleadings, the motions for summary judgment and the summary judgment evidence, that appellees have conclusively negated an essential element of appellants' causes of action as framed by their pleading, viz., that the negligent acts or omissions of appellants were proximate causes of the death of Deloris Faye January and the resultant damages sustained by appellants.

Appellants' points of error are overruled.

The judgment is affirmed.