**Jaclyn MOORE, Appellant,**

v.

**YARBROUGH, JAMESON & GRAY, Attorneys at Law and Janice Yarbrough, P.C., and Patricia Gray, P.C., and David Jameson, P.C., and Marcia Auberger, Appellees.**

**No. 07–97–0434–CV.**

Court of Appeals of Texas, Amarillo.

April 22, 1999.

---

**30.** *Id.* at 931.

**31.** *Id.*

**32.** *Cf. Robinson v. State,* 971 S.W.2d 96, 99 (Tex.App.—Beaumont 1998, pet. ref'd).

Wayne H. Paris, Attorney at Law, Houston, for appellant.

Oldenettel & McCabe (Rick L. Oldenettel), Houston, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

BOYD, Chief Justice.

In this appeal, Jaclyn Moore (Moore) challenges a take-nothing summary judgment in favor of appellees Yarbrough, Jameson & Gray, Attorneys at Law, Janice Yarbrough, P.C., Patricia Gray, P.C., David Jameson, P.C., and Marcia Auberger. The judgment arises from an underlying suit for legal malpractice. For reasons we later state, we reverse the judgment of the trial court.

Moore's legal involvement began when her husband assaulted her, causing serious neck injuries. As a result of the attack, Moore filed suit for divorce and began to seek compensation for her injuries. Ultimately, separate suits were filed with the divorce suit reaching final judgment first. This resulted in the husband successfully pleading *res judicata* in the personal injury suit because of the prior divorce judgment and receiving a summary judgment in the personal injury suit.

This set of circumstances resulted in the underlying suit in which Moore sued appellees for negligence, breach of fiduciary duty, and violations of the Deceptive Trade Practices Act under the theory that appellees failed to advise her of the legal consequence of pursuing her claims in separate suits. In response, appellees sought and received summary judgment on the basis that they had no duty to advise or represent her in regard to the personal injury claim.

It is now axiomatic that a defendant is entitled to summary judgment if he is able to establish that on at least one of the essential elements of the plaintiff's cause, he is entitled to judgment as a matter of law and that there is no genuine issue of fact. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). In determining whether there is a genuine question of material fact precluding summary judgment, evidence favorable to the non-movant will be taken as true and every reasonable inference from the evidence will be viewed in a light favorable to the non-movant. *Nixon v. Mr. Property Manage-ment Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Moreover, when a summary judgment order does not specify the ground or grounds relied upon for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

It is undisputed that Moore retained appellees to represent her in the divorce suit. It is also undisputed that they discussed a possible personal injury claim with her, advised her that was not their speciality, and advised and aided her to obtain counsel to pursue the personal injury claim. Additionally, the record establishes that divorce counsel contacted the personal injury counsel in an effort to determine whether personal injury claims would be pursued in the divorce suit context.

Moore initially argues that as a part of their representation of her in the divorce suit, appellees had the duty to advise her of the potentially adverse effect of trying the two claims separately. Secondly, she contends that a fact issue exists as to whether an attorney-client relationship existed between herself and appellees concerning the personal injury suit.

■ Appellees respond that legal malpractice claims, however pled, are tort claims to which an absence of duty is a defense. In particular, they maintain they had no duty toward Moore in connection with her personal injury claim because 1) there was no contract, like those customarily executed in personal injury cases, between appellees and Moore establishing an attorney-client relationship for the personal injury suit, 2) another attorney, Adam Pulaski, owed Moore the duty of legal representation concerning the personal injury claim, and 3) Moore unequivocally admitted that she did not retain nor was she looking to her divorce attorneys to represent her in her personal injury claim.

■ An attorney-client relationship must exist before an attorney is obligated to provide proper legal services. *Yaklin v. Glusing, Sharpe & Krueger,* 875 S.W.2d 380, 383 (Tex.App.—Corpus Christi 1994, no writ). In this case, appellees do not dispute they had an attorney-client relationship with Moore; rather, they posit that the scope of that relationship was limited to the divorce action and did not include any responsibility for personal injury claims. The relationship of attorney and client is usually not a difficult matter for the client to establish, but the duty owed by the attorney to the client is often a contested issue at trial. An attorney can be held negligent when the attorney fails to advise a party that he or she is not representing them in a case where the circumstances lead the party to believe that the attorney was representing him in a matter. The duty to advise would arise in a case in which the factfinder determined that the attorney was aware of, or should have been aware, that his or her conduct would have led a reasonable person to believe that she was being represented by the attorney. *Parker v. Carnahan,* 772 S.W.2d 151, 156–57 (Tex.App.—Texarkana 1989, writ denied).

■ We will assume *arguendo* that the summary judgment evidence was sufficient to establish as a matter of law that no written contingency fee contract such as is customarily used in personal injury cases was created between Moore and appellees, and that another and separate attorney was employed to handle the personal injury claim. However, that in itself is not sufficient to establish as a matter of law that appellees had no duty to advise Moore about the possible legal consequences of trying the divorce and personal injury suits independently. On May 5, 1993, some five months preceding Moore's divorce, our supreme court handed down its decision in *Twyman v. Twyman,* 855 S.W.2d 619 (Tex.1993). In that case, the court had occasion to discuss the possibility of bringing tort claims in a divorce action, rather than in a separate action, a procedure which, it noted, was permissible in some states and not in others. As relevant here, and in discussing the two differing methods, the court explicated:

> We believe that the best approach lies between these two extremes. As in other civil actions, joinder of the tort cause of action should be permitted, but subject to the principles of res judicata. See Barr v. The Resolution Trust Corp., 837 S.W.2d 627, 631 (Tex.1992) (reaffirming the transactional approach to res judicata analysis). *See also* Tex. R.Civ.P. 51. Of course, how such claims are ultimately tried is within the sound discretion of the trial court. *See* Tex. R.Civ.P. 174. But joinder of tort claims with the divorce, when feasible, is encouraged. Resolving both the tort and divorce actions in the same proceeding avoids two trials based at least in part on the same facts, and settles in one suit "all matters existing between the parties." (citation omitted).

*Id.* at 624–25. The court went on to caution that instances in which a factfinder awards tort damages to a divorcing spouse, the court could not consider, in order to avoid a double recovery, the same tortious act in dividing the marital estate. *Id.* at 625. This is a clear indication that if Moore's personal injuries were considered by the trial court in granting the divorce, a *res judicata* problem might arise in a later separate trial of a tort claim based on the same injuries. Under this record, we cannot say that appellees, admittedly domestic law specialists, established as a matter of law that they had no duty to advise Moore about the possible legal consequences of trying the divorce and personal injury matters separately.

Moreover, although appellees cite certain portions of Moore's deposition testimony to show that she unequivocally admitted she did not look to appellees for advice about litigating the personal injury claim, there are other portions of that same deposition, including some of the

same portions cited by appellees, where she indicates that she continued to rely upon appellees as well as the personal injury lawyer for advice in how to conduct both suits. Appellees, however, argue that Moore's deposition testimony and affidavit cannot be considered in deciding whether a fact question exists when portions of that testimony are contradictory because Texas Rule of Civil Procedure 166a(c) prevents the use of an interested party's testimony in a summary judgment to raise a fact question. We disagree.

■ In relevant part, Rule 166a(c) states that a summary judgment may be based on uncontroverted testimonial evidence of an interested witness if it is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. The rule is directed at situations in which a judgment is granted because of the testimony of an interested witness and does not mean that controverted or unclear testimony by an interested person may never be considered for any purpose in a summary judgment proceeding. *See Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 350 (Tex.1998) (holding that generally testimony of a witness who has an interest in the outcome of a suit cannot conclusively establish a matter, but rather raises an issue of credibility on which the jury must pass).

Included in the summary judgment record was also deposition testimony by John Browne, Moore's expert witness, as to the continued duties of a divorce attorney in matters such as the instant one and that as a part of those duties, both the divorce attorney and the personal injury lawyer should have advised Moore as to the *res judicata* danger in trying the two matters separately. There is also included in the record excerpts from the deposition of Adam Pulaski, the personal injury lawyer in which he says that because of the competency of the divorce attorneys and the fact that "they (appellees) wanted them to be two separate causes of action," there

was no need for him to "protect" Moore. Pulaski, speaking as the personal injury lawyer, also opined that "there are matters that were brought up during the divorce action that either should not have been brought up, or if they were brought up, then this entire claim should have been handled through the divorce." Although appellees argue that under the law, they had clearly no duty to advise Moore of the *res judicata* danger in trying the matters separately, we disagree. Under the *Twyman* case doctrine, the court clearly indicated the possibility that *res judicata* might apply to matters involved in one action that were testified about in a prior action.

■ The doctrine of *res judicata* prevents relitigation of claims brought, or related claims that could have been brought, in a prior lawsuit by the same parties. *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.,* 837 S.W.2d 627, 628 (Tex.1992); *Freeman v. McAninch,* 87 Tex. 132, 27 S.W. 97, 98 (1894). To determine whether a related claim is barred under that doctrine, Texas courts must consider " 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage.' " *Barr,* 837 S.W.2d at 631.

Appellees did not present summary judgment evidence that the facts presented in the course of the divorce case were not related in time, space, origin, or motivation to the personal injury claim. Without proving as a matter of law that the evidence giving rise to the personal injury claims was so dissimilar to that giving rise to the divorce so that a discussion about the possibility of *res judicata* was not required, appellees did not meet the heavy burden of showing their entitlement to summary judgment.

Accordingly, we must, and do, reverse the judgment of the trial court and remand the case to that court.