HOUSTON PIPE LINE
COMPANY, Appellant,

v.

BHP PETROLEUM (AMERICAS),
INC., Appellee.

No. C14–87–00138–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 14, 1988.

Richard Alsup, Houston, for appellant.

Ray Langenberg, Austin, Morgan L. Copeland, Lois E. Fielding, Houston, for appellee.

Before PAUL PRESSLER, JUNELL
and SEARS, JJ.

OPINION

JUNELL, Justice.

This is an appeal from a summary declaratory judgment concerning the refund due under a gas sales contract between the seller, BHP Petroleum (Americas), Inc. (appellee or BHP), and the purchaser, Houston Pipe Line Company (appellant or Houston Pipe). In two points of error, Houston Pipe contests both the summary judgment and the award of attorney's fees to BHP. We affirm the judgment of the trial court.

By way of background, the Natural Gas Policy Act of 1978 (NGPA) established maximum lawful prices or ceiling prices per million Btu's (MMBtu's) for various categories of natural gas. 15 U.S.C. §§ 3301–3432 (Supp. V 1981). A Btu (British thermal unit) is the standard of measurement of the energy content of natural gas. Following the passage of the NGPA, the Federal Energy Regulatory Commission (FERC) promulgated a new rule for measuring Btu's. This rule required that

the content be measured under the varying, relatively "dry" conditions at which gas is delivered for sale rather than the uniform, water-vapor saturated "wet" conditions under which FERC had previously determined the energy content. *Interstate Natural Gas Ass'n of America v. Federal Energy Regulatory Commission*, 716 F.2d 1, 4 (D.C.Cir.1983), *cert. denied*, 465 U.S. 1108, 104 S.Ct. 1615, 80 L.Ed.2d 144 (1984) (see for history and discussion of Btu measurement rules). However, in 1983 the D.C. Circuit Court of Appeals vacated the "dry" rule, finding it to be inconsistent with the NGPA's language, structure and legislative history. *Id.* at 14–15. FERC then adopted the "wet" rule and applied it retroactively to the passage of the NGPA. 49 Fed.Reg. 3,072 (1984); 49 Fed.Reg. 37,-735, 37,737 (1984).

Use of the wet rule resulted in a slightly lower Btu content than that obtained by use of the dry rule. The lower Btu content, in turn, lowered the maximum amount of revenues that could be collected under the NGPA. Because the wet rule was applied retroactively, some producers found they had overcharged their purchasers and were required to refund those overcharges. FERC addressed the issue of refunds in its Order No. 399.

> Specifically, any first seller that collected revenues in excess of the product of (a) the applicable maximum lawful price established by the NGPA, and (b) the quantity of MMBtu's (million Btu's) determined on the basis of the wet rule (i.e., under standard test conditions), must refund any such excess revenues. To the extent that revenues collected for gas sold in a first sale under the NGPA are less than or equal to the level of revenues thus calculated, and are contractually authorized, no excess revenues would have been collected, and no refunds are due.

49 Fed.Reg. at 37,737.

Houston Pipe and BHP executed a gas purchase contract on October 14, 1976. This dispute involves the sale of gas from January 1, 1981, through June 30, 1983. During this period, Houston Pipe paid BHP based on the dry rule and a price per MMBtu pursuant to annual redetermination agreements. Each agreement (in letter form) set the contract price for that year at the NGPA ceiling price in effect for the first month of that year. Thus, the price per MMBtu was set at $2.667 for 1981, $3.003 for 1982 and $3.299 for 1983. It is important to note, however, that according to the NGPA schedule, the ceiling price actually escalated *each month*. Therefore, while the ceiling price per MMBtu's delivered in January 1981 was $2.667, by December 1981 the ceiling price was $2.971. Regardless, the price paid by Houston Pipe remained at $2.667 throughout the year per the contract.

Upon the adoption of the wet rule and the issuance of the refund regulations, Houston Pipe determined that it had been overcharged during the thirty-month period and invoiced BHP for a refund. BHP refunded $97,884.71 but later decided the amount owed was only $15,901.43. When Houston Pipe disagreed and would not return the difference of $81,983.28, BHP filed suit. BHP then filed a motion for summary judgment, which the trial court granted. BHP was awarded the $81,983.28 plus interest and, following a hearing, was also awarded attorney's fees of $40,000 (inclusive of appeals).

As indicated, this dispute has to do with the amount of the refund due under FERC Order No. 399. BHP calculated the refund by first converting the dry MMBtu's to wet MMBtu's (using a conversion factor of .9826 as referenced in FERC Order No. 93–A, 46 Fed.Reg. 24,537, 24,545 (1981)) and then applying the formula set out in FERC Order No. 399 (the applicable maximum lawful price established by the NGPA times the quantity of MMBtu's determined on the basis of the wet rule). According to BHP's calculations, a refund was due for January and February of 1981, January and February of 1982 and January, February and March of 1983 because in those months the revenues received under the contract exceeded those allowed under the NGPA. Refunds were not owed for any other months because of the fact, noted earlier, that the maximum lawful price or

ceiling price escalated monthly in contrast to the fixed contract price, which was readjusted each January 1. Shortly into each contract year, the difference between the fixed contract price (the price factor in calculating contract revenues) and the escalating maximum lawful price (the price factor in the refund formula) became significant enough to offset the lower Btu content caused by the change in the method of measurement. At that point the maximum revenues exceeded the contract revenues, and no refunds were due until the contract price was adjusted to the maximum lawful price the following January. The following data from January and March of 1982 may help to illustrate this point:

**January 1982**

| Dry MMBtu's | × | Contract Price | = | Contract Revenues |
|---|---|---|---|---|
| 52,468 | × | $3.003 | = | $157,561.40 |

| Wet MMBtu's | × | Ceiling Price | = | NGPA Maximum Revenues |
|---|---|---|---|---|
| 51,555 | × | $3.003 | = | $154,819.67 |

(revenues received exceed NGPA maximum revenues; therefore, refund due)

**March 1982**

| Dry MMBtu's | × | Contract Price | = | Contract Revenues |
|---|---|---|---|---|
| 61,358 | × | $3.003 | = | $184,258.07 |

| Wet MMBtu's | × | Ceiling Price | = | NGPA Maximum Revenues |
|---|---|---|---|---|
| 60,290 | × | $3.063 | = | $184,668.27 |

(revenues received are less than NGPA maximum revenues; therefore, no refund due)

---

According to Houston Pipe's calculations, however, a refund was owed for every month during the thirty-month period instead of for only seven months. Houston Pipe therefore appeals the judgment with two points of error.

In point of error one, Houston Pipe argues that the trial court erred in granting appellee's motion for summary judgment. We consider this argument keeping in mind the following standards. To be entitled to summary judgment, the movant must conclusively prove all essential elements of his claim. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986). The movant has the burden of showing there is no genuine issue of material fact and that he is entitled to summary judgment as a matter of law. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985).

Houston Pipe attacks the summary judgment on nine grounds. Six of those concern the effect of two sections of the contract and a paragraph in the price redetermination letters. These are as follows:

6.c Each of Seller and Buyer is hereby given the option to cause the price to be paid by Buyer for Seller's gas to be redetermined, as hereinafter provided, for the second contract year, and additional such options for each succeeding contract year during the term of this Contract. Such redetermined price shall become effective on the first day of the contract year for which it is determined and shall remain effective until again redetermined.... (contract)

17. This Contract is subject to all present and future valid orders, rules and regulations of any regulatory body of the Federal Government, the State of Texas, or any other authority having jurisdiction thereof. (contract)

You are advised that any payment made by Houston Pipe Line Company on the basis of the above specified price and supported by the attached schedule is subject to refund by you in the event that such price is determined to be in excess of the ceiling price permitted under the Natural Gas Policy Act of 1978. (redetermination letter)

■ The essence of Houston Pipe's argument is that the FERC Btu orders reduced the NGPA ceiling prices and, by operation of the contract and redetermination letters, reduced the redetermined contract prices, thereby reducing the revenues that BHP was contractually entitled to receive. Houston Pipe also argues that the trial court's judgment is erroneously based on the theory that the redetermined contract prices could and did increase on or about March 1 of each year. However, we find that neither the NGPA maximum lawful prices nor the redetermined contract prices changed as a result of the orders and that the contract prices indeed remained constant throughout each redetermination period.

■ The NGPA ceiling prices are set forth in 18 C.F.R. § 271.101 (1986), and this section was not amended by the FERC Btu orders. What the orders did change was the method of measuring Btu's for NGPA purposes. This change in Btu measurement in turn reduced the amount of revenues that could legally be collected and required refunds in certain circumstances. To reiterate, the actual refund language in FERC Order No. 399 provides:

(A) Any first seller that collected revenues in excess of the product of (a) the applicable maximum lawful price established by the NGPA, and (b) the quantities of MMBtu's determined on the basis of § 270.204, shall refund any such excess revenues.

According to this formula, BHP collected excess revenues only in the first months of each year. Furthermore, the contract prices were stated in the redetermination letters and were never changed by the parties. In actuality, the contract prices never exceeded the NGPA ceiling prices, and

BHP was contractually entitled to the amount awarded in the judgment.

Houston Pipe also maintains in point of error one that in its motion for summary judgment, BHP relied on an alleged "course of dealing" of the parties. Houston Pipe argues that such a theory cannot support a summary judgment on an unambiguous contract and that the theory itself is not valid. BHP agrees that the contract is not ambiguous but argues that the course of dealing of the parties is admissible to establish the basic facts that give rise to the lawsuit. Perhaps the use of the term *course of dealing* is unfortunate because BHP does indeed appear to be using it as a way to relate the facts of the case rather than in a legal sense. We therefore find no real issue here.

Houston Pipe next argues that BHP's motion for summary judgment did not expressly set out the issues of law and fact upon which it claimed to be entitled to a summary judgment as required by Tex.R. Civ.P. 166a(c). The purpose of the rule is to require that the respondent be provided with adequate information to oppose the motion and to define the issues on which summary judgment is requested. *Sparks v. Cameron Employees Credit Union,* 678 S.W.2d 600, 602 (Tex.App.—Houston [14th Dist.] 1984, no writ). We find that BHP's motion satisfied these requirements, and point of error one is overruled.

■ In point of error two, Houston Pipe contends that the trial court erred in ruling that Houston Pipe could not introduce evidence of a conflict of interest by BHP's lawyers for the purpose of showing that the award of attorney's fees should be denied or reduced. Houston Pipe and HNG Oil Company (HNG Oil) are wholly-owned subsidiaries of Houston Natural Gas Corporation (HNG). The law firm representing BHP in this case has represented HNG Oil on "virtually all matters" for at least fifteen years. The firm is currently on retainer and was on retainer at all times relevant to this proceeding. Houston Pipe claims that the firm did not seek written or oral permission from HNG Oil to sue BHP and waited seven or eight months after the

suit was filed to call the president to advise him of the suit. In response, BHP points out that the law firm filed the affidavit of one of its partners, stating that he had telephoned Ted Collins, the president of HNG Oil, on three different occasions and received permission to continue to represent BHP. However, Houston Pipe asserts that the general counsel of HNG Oil would have testified to the contrary.

In response to the point of error, BHP argues that Houston Pipe waived its objection to the alleged conflict of interest; that there is no conflict; and that if there were a conflict, it would be irrelevant. In support of its waiver argument, BHP states that Houston Pipe did not raise the question of a conflict of interest prior to the hearing on attorney's fees and first pled the issue in its motion for new trial. We find that by its failure to raise the issue in a timely manner, Houston Pipe waived its right to object to the trial court's ruling. *See Turner v. Turner*, 385 S.W.2d 230, 236 (Tex.1964); *Empire Life and Hospital Insurance Co. v. Harris*, 595 S.W.2d 904, 907 (Tex.Civ.App.—Austin 1980, no writ).

Furthermore, the firm's representation of BHP in this matter is unrelated to the work it does for HNG Oil, which, according to the Consultant's Agreement between the two (with the law firm acting as an independent consultant), involves oil and gas regulatory matters and general business advice on oil and gas production but no litigation. Finally, Houston Pipe does not specify how it might be prejudiced by the firm's representation of BHP in this instance. We therefore find that the trial court did not err in its ruling, and we overrule point of error two.

The judgment of the trial court is affirmed.