Kelleher 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00354-CV







John C. Kelleher; S. O. Callahan, IV; Thomas M. Rogoff; Thomas M. Rogoff, M. D.,


P. A.; Paul Akers; T. Coe Branch; Jack W. Chisum; Martin McGonagle;


Brenda McIntosh; James T. Perry; Samuel C. Tsai; Robert G. Young;


and Alfred Zevallos, Appellants



v.



Texas Life, Accident, Health and Hospital Service Insurance


Guaranty Association, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 93-02585, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING








 The Texas Life, Accident, Health and Hospital Service Insurance Guaranty
Association (the "Guaranty Association") sought declaratory relief that it was not required to
provide benefits to certain insureds (whom we shall refer to collectively as "Kelleher") who hold
policies from an insolvent insurer. Both sides presented motions for summary judgment asking
the trial court to determine the Guaranty Association's liability to the insureds under Texas
Insurance Code article 21.28-D (West Supp. 1995) (the Life, Accident, Health and Hospital
Service Insurance Guaranty Association Act, or the "Act"). Kelleher brings this appeal
complaining that the trial court erroneously denied his motion for summary judgment and
erroneously granted the Guaranty Association's motion. We will affirm the trial court's
judgment.



BACKGROUND 


 Beginning in 1988, Kelleher purchased from Inter-American Insurance Company
of Illinois ("Inter-American") group term life insurance policies that provided level death benefits
for employees but allowed the insured to convert the term life policy to a permanent universal life
policy at a later date. Many term life insurance policies have this conversion feature and allow
the insured to begin paying for permanent insurance based on the insured's age at the time of the
conversion. Under such plans the permanent life insurance policy has no cash value at the time
of conversion. Inter-American's policies were unique: they permitted the insured to switch to
permanent insurance that immediately had a cash surrender value at the time of conversion. For
this special conversion privilege, Inter-American charged a premium substantially higher than the
normal premium for a term life policy. The difference between the high premium paid and the
cost of term life insurance was placed in an interest-bearing "accumulation account" by Inter-American, and this account represented certain "conversion credits" that determined the cash value
of any permanent insurance if the insured later chose to convert the term life policy to a universal
life policy or other permanent insurance. (1) The explanation for this elaborate scheme? All
premiums paid for group term life insurance could be deducted for income tax purposes, while
payments for individual "permanent insurance" policies were not deductible.

 In December 1991, the Deputy Receiver of Illinois placed Inter-American in
liquidation. In July 1992, the Texas Commissioner of Insurance designated Inter-American as an
impaired insurer in this state, triggering the Guaranty Association's obligations to Inter-American
policyholders under the Act. Before Inter-American was declared impaired in Texas, Kelleher
and the other insureds named in this suit had attempted to convert their group term life policies
to individual permanent insurance pursuant to their conversion privilege, but for unstated reasons
none of the conversions were completed before July 1992. The Guaranty Association took the
position that Inter-American term life policies had no present cash value, as indeed was true under
the scheme that had been devised for income tax purposes. The Guaranty Association paid
benefits to all Inter-American policyholders who had converted their term policies to universal life
policies with a cash value before July 1992, but refused to honor any conversion requests, or to
issue any substitute policies, or to pay any benefits to policyholders still owning term life policies.



ANALYSIS


 The standards for reviewing a summary judgment are well established: the movant
for summary judgment has the burden of showing that no genuine issue of material fact exists and
that it is entitled to judgment as a matter of law. Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985). Here, where there is no dispute about the facts and the trial
court was asked by both sides to declare the obligations of the Guaranty Association under the
applicable sections of the Insurance Code, the grant or denial of summary judgment is purely a
question of law.

 The legal question presented is whether article 21.28-D of the Insurance Code
obligates the Guaranty Association (1) to convert term life policies with no cash value to
permanent insurance with cash value, or (2) to provide any benefits in recognition of the
"conversion credits" of those policies, or (3) to provide substitute coverage of any kind. Because
we believe that the trial court properly interpreted the statute to impose none of these obligations
on the Guaranty Association, we find no error in its grant of summary judgment in favor of the
Guaranty Association (point of error one) and no error in its denial of Kelleher's motion for
summary judgment (point of error two).

 The summary judgment proof submitted by the Guaranty Association established,
without contradiction, that each of the insureds owned group term life policies issued by Inter-American that had a special conversion privilege, that each policyholder had applied to the
Guaranty Association to convert the group term life policy to an individual universal life policy
pursuant to this conversion privilege, and that none of the insureds had converted their term life
policies to permanent insurance before Inter-American was declared to be an impaired insurer.

 The Guaranty Association was created to protect the policyholders of impaired
insurers by paying benefits and continuing coverage "as limited in this Act"; members are
assessed a fee to fund the performance of the Guaranty Association. Tex. Ins. Code Ann. art.
21.28-D, § 2 (West Supp. 1995). Section 8 of the Act sets forth the powers and duties of the
Guaranty Association. In denying the policyholders' request that it convert the term life policies
to permanent life, the Guaranty Association relies on the language of section 8(e)(1) that it shall
assure payment of benefits that would have been payable under the policies of the insolvent
insurer, "except for terms of conversion and renewability." Tex. Ins. Code Ann. art. 21.28-D,
§ 8(e)(1) (emphasis added).

 This section would seem to exclude any obligation of the Guaranty Association to
convert a term life policy to a universal life policy with cash value. But Kelleher argues that he
is not asking the Guaranty Association to convert his term life policy to a universal life policy,
a request which the Guaranty Association could not honor under the plain language of section
8(e)(1). Rather, he is asking the Guaranty Association to replace his term life policy with another
term life policy that has a conversion privilege that would allow it to be converted to a permanent
policy with immediate cash value. As support for this request, Kelleher relies on section 8(e)(3)
which deals with the Guaranty Association's obligation to replace certain policies: ". . . with
respect to an individual formerly insured under a group policy who is not eligible for replacement
group coverage, [the association shall] substitute coverage on an individual basis in accordance
with the provision of Subsection (f) of this section, if the insureds had a right under law or the
terminated policy to convert coverage to individual coverage or continue an individual policy in
force until a specified age or for a specified time." Tex. Ins. Code Ann. art. 21.28-D, § 8(e)(3). 
Section 8(f) then specifies that, "In providing the substitute coverage required under Subsection
(e)(3) of this section, the association may offer either to reissue the terminated coverage or to
issue an alternative policy." Tex. Ins. Code Ann. art. 21.28-D, § 8(f). Kelleher argues that he
is not asking for conversion, but for "substituted coverage" under the combined authority of these
two subsections.

 Kelleher asserts that section 8(e)(3) conflicts with the language of section 8(e)(1)
directing the Guaranty Association not to convert policies. Under the in pari materia doctrine of
statutory construction, Kelleher would have us resolve this "conflict" by rejecting the general
prohibition against honoring conversion privileges to follow the more specific directive of section
8(e)(3) to issue substitute coverage.

 Kelleher attempts to create a conflict where none exists. We decline this invitation
to ignore the clear language that excludes from the Guaranty Association's duties any obligation
to convert a policy of an impaired insurer. Section 8(e)(1) relieves the Guaranty Association of
the obligation to honor the special conversion privilege of these group term life policies. Section
8(e)(3) may impose a duty to replace group life benefits which have been lost, that is level death
benefits, but it does not impose a duty on the association to reissue a policy that can then be
converted to a cash value individual policy as an end-run around the prohibition found in section
8(e)(1).

 We agree with the trial court that section 8(e)(3) does not impose a duty on the
Guaranty Association to create a new and different policy, with a special conversion privilege
such as the ones Inter-American created for policyholders seeking certain income tax benefits. 
Section 2 states that the purpose of the Act is to protect policyholders from the failure of insurers,
"subject to certain limitations." Tex. Ins. Code Ann. art. 21.28-D, § 2. One of those limitations
is set forth in section 8(e)(1): the Guaranty Association shall not have any exposure on future
policies that have not yet come into existence at the time of the insurer's insolvency. Tex. Ins.
Code Ann. art. 21.28-D, § 8(e)(1).

 Kelleher claims that it is unfair that others who converted their group term life
policies before July 1992 have had their policies honored. However, those insureds were holding
individual universal life policies with cash value at the time of the insolvency and did not have to
seek a conversion. Kelleher intentionally structured his benefit plan so that the only policy created
would be a group term life policy with no cash value. The benefit plan required that the initial
policy be converted, that exchange costs be paid and that a universal life policy be issued before
any cash value was created. This scheme, which was intended to create no permanent benefit
without a conversion, created certain income tax benefits for the policyholders. Under the Act,
it also imposed an unexpected penalty on the policyholders who failed to accomplish a conversion
before Inter-American was designated an impaired insurer.

 We overrule both points of error and affirm the summary judgment of the trial
court.



 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Jones and B. A. Smith

Affirmed

Filed: November 1, 1995

Do Not Publish

1.   A "cost of "exchange" might be required to fund the guaranteed cash value of
the permanent insurance as if it had been the original policy issued. In lieu of paying this
cost of exchange, the insured could elect a "special conversion policy." If the cost of
exchange was paid, the permanent insurance would have a surrender charge of 10% in
the first year, reduced by 1% in each of the following years. If the cost of exchange was
not paid, the new policy would have a surrender charge of 100% the first year, reduced
by 10% in each of the following years.