**Mark STOLLE and Melanie Stolle, Individually and a/n/f of Mariel Stolle, a Minor Child, and as Representatives of the Estate of Julianna Stolle, Deceased, Appellants,**

v.

**BAYLOR COLLEGE OF MEDICINE, Anthony Corbet, M.D., Alicia Moise, M.D., James Adams, M.D., and Texas Children's Hospital, Appellees.**

No. 01–97–01237–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 20, 1998.

Rehearing Overruled Oct. 14, 1998.

Steven Ray Davis, Kevin Dubose, Houston, for Appellants.

Claude McQuarrie, III, Houston, Ben Taylor, D. Todd Smith, Dallas, Tamara Marie Madden, Brian P. Johnson, Houston, for Appellees.

Before O'CONNOR, TAFT, and SMITH,* JJ.

## OPINION

JACKSON B. SMITH, Jr., Justice (Retired).

In this medical malpractice suit, appellants, Mark and Melanie Stolle, seek damages from appellees, doctors and hospitals, for appellees' negligent disregard of appellants' instructions not to use "heroic efforts" or artificial means to prolong the life of their child who was born with brain damage. They allege that such negligence resulted in further brain damage to the child, prolonged the child's life, and caused them extraordinary costs that will continue as long as the child lives.[1] The trial court granted summary judgment for the appellees.

On January 7, 1991, Melanie gave premature birth to twins at Woman's Hospital of Texas. One of the twins, Julianna, died soon after mechanical ventilation was withdrawn; the other twin, Mariel, survived. Dr. Don M. Schaffer was Mariel's attending physician and pediatrician following her birth. A head ultrasound performed on Mariel revealed a grade IV left intraventricular hemorrhage and a grade II right intraventricular hemorrhage.

On February 18, 1991, Schaffer had Mariel transferred to Texas Children's Hospital, where he continued to act as her attending physician and pediatrician. While there, Dr. Anthony Corbet and Dr. Alicia Moise from the Baylor College of Medicine were Mariel's

---

* The Honorable Justice Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. Mark and Melanie have admitted in their brief on appeal that they do not seek any recovery on behalf of their impaired child, Mariel.

neonatalogists.[2] On March 11, 1991, at the request of Schaffer, Dr. Robert S. Zeller performed a neurological consultation and determined that Mariel had suffered irreversible damage to her brain and would have a neurological deficit. Zeller noted in Mariel's medical chart that Melanie and Mark "did not want any heroic efforts" made to prolong Mariel's life "if [the] occasion arises."

On March 14, 1991, Schaffer ordered that Mariel was not to receive chest compressions, intubation, or cardiac medications. The following day, Melanie and Mark executed a written "Directive to Physicians" on behalf of Mariel in which they made known their desire that Mariel's life not be artificially prolonged under the circumstances provided in that directive. One such circumstance was as follows:

> If at any time the patient whose name appears above should have an incurable condition caused by injury, disease, or illness certified to be a terminal condition by two physicians, and where the application of life-sustaining procedures would serve only to artificially prolong the moment of his/her death and where his/her attending physician determines that his/her death is imminent whether or not life-sustaining procedures are utilized. I/we direct that such procedures be withheld or withdrawn, and that he/she be permitted to die naturally.

On April 11, 1991, Mariel suffered an apneic episode with bradycardia after regurgitating her food. An unnamed, unidentified nurse-clinician administered chest compressions for 30 to 60 seconds. The intervention ended the episode, and Mariel continues to live today.

Mark and Melanie sued appellees[3] for the following acts or omissions: (1) from Mariel's birth until March 14, 1991, appellees did not make appropriate medical entries to reflect Melanie and Mark's wishes to refrain from

"heroic" life-sustaining measures or to place Mariel on a "do not resuscitate" status; (2) appellees initiated life-saving measures in violation of Schaffer's orders; (3) on April 11, 1991, Texas Children's Hospital did not follow Schaffer's orders, which were in Mariel's medical chart, when it applied chest compressions and mechanically administered breathing to artificially prolong Mariel's life; (4) appellees did not follow procedures to make known Schaffer's orders to all the staff members; (5) appellees did not convene a bioethics committee to consider Melanie and Mark's wishes and the necessity of a "do not resuscitate" order; (6) appellees did not note in Mariel's medical chart any disagreements with Schaffer's orders or Melanie and Mark's wishes; (7) appellees did not make reasonable efforts to transfer Mariel to another doctor once it was determined that there would be no compliance with Schaffer's orders or Melanie and Mark's wishes; (8) the Baylor appellees did not have an ongoing dialogue with Melanie and Mark regarding Mariel's condition and their right to control any medical intervention; (9) the Baylor appellees disregarded Melanie and Mark's wishes regarding medical treatment which resulted in resuscitative efforts, which, in turn, caused Mariel further neurological damage; (10) the Baylor appellees did not have a "do not resuscitate" order in place before March 14, 1991, even though they were aware of Melanie and Mark's wishes; and (11) the Baylor appellees did not discuss the implications of the first head ultrasound performed on Mariel with Melanie and Mark, and they did not formulate a treatment plan accordingly.

In their motions for summary judgment, appellees argued they were entitled to summary judgment because: (1) physicians or health professionals are immune under section 672.016(b) of Texas Natural Death Act;[4] (2) the Texas Natural Death Act did not authorize appellees to withhold life-sustain-

---

2. Moise's initial contact with Mariel occurred on March 1, 1991, and Corbet's initial contact with Mariel occurred on April 1, 1991.

3. The Stolles also sued the physician who treated Melanie before she delivered the twins for, among other things, not advising Melanie and Mark of the bleak prognosis of their two daugh-

ters and not discussing health care options before the delivery of the twins. However, this physician is not a party to this appeal.

4. *See* TEX. HEALTH & SAFETY CODE ANN. § 672.016(b) (Vernon 1992).

ing procedures; (3) the conditional terms of Melanie and Mark's directive to physicians were never met; and (4) Melanie and Mark have not asserted a legally cognizable or actionable injury based on "wrongful continued life." The trial court granted appellees' motions for summary judgment without specifying the reasons for such a decision.

On appeal, Melanie and Mark contend the trial court erred in granting summary judgment for the following reasons: (1) they pleaded a valid negligence cause of action; (2) their summary judgment proof raised a fact question regarding the cause of action pleaded; and (3) their negligence cause of action is not defeated by statutory immunity.

In reviewing a summary judgment, we must take all evidence favorable to the nonmovant as true and grant every reasonable inference in favor of the nonmoving party. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). If differing inferences may reasonably be drawn from the summary judgment evidence, a summary judgment should not be granted. *Id.* at 549. The movant's own evidence may establish the existence of a genuine issue of material fact on the plaintiff's claim. *Armbruster v. Memorial Southwest Hosp.,* 857 S.W.2d 938, 941 (Tex.App.—Houston [1st Dist.] 1993, no writ).

The elements of a medical negligence claim are: (1) a duty to conform to a certain standard of care; (2) a failure to conform to the required standard; (3) actual injury; and (4) a reasonably close causal connection between the conduct and the injury. *Armbruster,* 857 S.W.2d at 940. A defendant seeking a summary judgment must prove conclusively that the plaintiff cannot prevail. *Griffin v. Rowden,* 654 S.W.2d 435, 435–36 (Tex.1983); *Armbruster,* 857 S.W.2d at 940. This may be accomplished by proving at least one element of the claim conclusively against the plaintiff.

*Gray v. Bertrand,* 723 S.W.2d 957, 958 (Tex. 1987); *Armbruster,* 857 S.W.2d at 940–41. If the movant negates an element of the plaintiff's claim, the plaintiff must produce controverting evidence raising a fact issue on the element or elements negated. *Armbruster,* 857 S.W.2d at 941. The plaintiff must prove by competent medical evidence either that the defendant did something other health care providers using ordinary care would not have done or that it failed to do something they would have done under the same circumstances. *Birchfield v. Texarkana Memorial Hosp.,* 747 S.W.2d 361, 366 (Tex.1987); *Armbruster,* 857 S.W.2d at 941.

The main thrust of Melanie and Mark's claim is that appellees did not properly note, acknowledge, or effectuate their wishes to withhold care from their daughter, Mariel, and as a result of such negligence, Melanie and Mark have and will continue to incur medical expenses for sustaining Mariel. The central issue in this case is whether appellees are immune from liability under the Texas Natural Death Act. Section 672.016(b) of the Texas Natural Death Act provides: "A physician, or a health professional acting under the direction of a physician, is not civilly or criminally liable for failing to effectuate a qualified patient's directive." TEX. HEALTH & SAFETY CODE ANN. § 672.016(b) (Vernon 1992). A "qualified patient" is a "patient with a terminal condition that has been diagnosed and certified in writing by the attending physician and one other physician who have personally examined the patient."[5] A "terminal condition" is an "incurable condition caused by injury, disease, or illness that would produce death regardless of the application of life-sustaining procedures, according to reasonable medical judgment, and in which the application of life-sustaining procedures serves only to postpone the moment of the patient's death."[6]

---

**5.** Since the date of the incident in question, this provision has been renumbered without any substantive changes. *See* Act of May 16, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230, 2982–83 (former TEX. HEALTH & SAFETY CODE § 672.002(6), *amended by* Act of Mar. 21, 1991, 72d Leg., R.S., ch. 14, § 208, 1991 Tex.

Gen. Laws 42, 188 (TEX. HEALTH & SAFETY CODE ANN. § 672.002(8) (Vernon 1992)).

**6.** Since the date of the incident in question, this provision has been renumbered without any substantive changes. *See* Act of May 16, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230, 2982–83 (former TEX. HEALTH & SAFE-

On appeal, Melanie and Mark argue that they do not seek to impose liability on appellees "for failing to effectuate a qualified patient's directive." Their fourth amended petition belies this assertion.[7] In pertinent part that petition states:

> Dr. Moise had the parents sign a document called "Directive to Physicians." This was the first attempt by the Baylor physicians to acknowledge the Stolle's [sic] wishes regarding the treatment of their daughter. The Directive to Physicians directs all health care providers treating Mariel Stolle to withhold or withdraw life-sustaining procedures that would only artificially prolong the moment of death, and to permit her to die naturally. The Directive to Physicians was placed in the chart for Mariel Stolle.

The "Directive to Physicians," which Melanie and Mark executed, provides that Mariel's life-sustaining procedures should be withdrawn or withheld in the event that (1) Mariel has an incurable condition caused by injury, disease, or illness certified to be a terminal condition by two physicians; (2) the application of life-sustaining procedures would only artificially prolong the moment of her death, and (3) her attending physician (*i.e.*, Schaffer) determines that Mariel's death is imminent whether or not life-sustaining procedures are used.

The language of Melanie and Mark's "Directive To Physicians" is derived from section 672.004 of the Texas Natural Death Act.[8] The authority to execute such a directive on behalf of Mariel, also comes from the Natural Death Act. *See* TEX. HEALTH & SAFETY CODE ANN. § 672.006(2) (Vernon 1992). Thus, Melanie and Mark's argument that chapter 672 of the Natural Death Act is not invoked is meritless.

There is conflicting summary judgment evidence on whether Mariel had a terminal condition. According to Schaffer, Corbet, Moise, and Zeller, Mariel was not in a terminal condition. According to Melanie and Mark's expert, Dr. Deborah J. Devendorf, Mariel was in a terminal condition. It is undisputed that none of the treating physicians classified Mariel's condition as terminal. Nevertheless, under either factual circumstance, appellees would not be liable for withholding care.

First, if Mariel had been in a terminal condition, she could be a "qualified patient" and appellees would be immune under section 672.016(b) of the Natural Death Act.[9] On the other hand, if Mariel was not in a terminal condition, as appellees allege, then the condition for withholding life-sustaining procedures contained in Melanie and Mark's written "Directive to Physicians" was not met.

Melanie and Mark contend that the Natural Death Act does not supersede their negligence action under the Medical Liability and Insurance Improvement Act, article 4590i of the Texas Revised Civil Statutes. *See* TEX. REV. CIV. STAT. ANN. art. 4590i (Vernon Supp.1998). They point to section 672.021 of Natural Death Act which provides, "This chapter does not impair or supersede any legal right or responsibility a person may have to effect the withholding or withdrawal

---

TY CODE § 672.002(7), *amended by* Act of Mar. 21, 1991, 72d Leg., R.S., ch. 14, § 208, 1991 Tex. Gen. Laws 42, 188 (TEX. HEALTH & SAFETY CODE ANN. § 672.002(9) (Vernon 1992)).

7. Melanie and Mark appear to suggest that there were other expressions of their wishes to withhold care. For example, there was a note dated February 19, 1991, in Mariel's medical records that Melanie and Mark did not want any "heroic efforts done to prolong her life if [the] occasion arises." There is no evidence that any occasion arose to resuscitate Mariel until April 11, 1991. By that time, Melanie and Mark had the written "Directive to Physicians" in Mariel's medical chart.

8. *See* Act of May 16, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230, 2983–84, *amended by* Act of Mar. 21, 1991, 72nd Leg., R.S., ch. 14, § 209, 1991 Tex. Gen. Laws 42, 189–90 (TEX. HEALTH & SAFETY CODE ANN. § 672.004 (Vernon 1992)).

9. Although to be a "qualified patient" Mariel also had to be certified by two physicians, including her attending physician, as being in a terminal condition, Melanie and Mark's fourth amended petition *does not* allege that appellees did *not do* this. Melanie and Mark merely allege that appellees did not note their wishes to withhold care from their daughter, who was in a terminal condition, and to place her on "do not resuscitate" status.

of life-sustaining procedures in a lawful manner." *See* TEX. HEALTH & SAFETY CODE ANN. § 672.021 (Vernon 1992). The facts of this case do not support this contention. Melanie and Mark do not cite us to any authority that would have allowed the withdrawal of life-sustaining procedures in a lawful manner.

We hold that the Texas Natural Death Act provides immunity to appellees for their actions in the treatment and care of appellants' child. We further hold that such immunity precludes common-law causes of action asserted by appellants arising out of the same facts.

The judgment of the trial court is affirmed.