**M.D. MARK, INC., Appellant,**

v.

**NUEVO ENERGY COMPANY, Appellee.**

**No. 01–97–00864–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 1, 1999.

Bobbie G. Bayless, Houston, for appellant.

Alexander Carl Chae, Gardere, Wynne, Sewell & Riggs, LLP, Houston, Kimberly M. Robinson, Gardere & Wynne, LLP, Dallas, for appellee.

Panel consists of Justices MIRABAL, HEDGES, and EVANS.*

## OPINION

MARGARET GARNER MIRABAL, Justice.

This is an appeal from a summary judgment in a breach of contract case involving seismic data licensing agreements, the construction of confidentiality provisions, and the effect of corporate mergers on the rights of the parties. We affirm.

Appellant, M.D. Mark, Inc. (Mark), is the owner of certain licensed seismic data that it acquired through transfer from Professional Geophysics, Inc. (PGI) in 1991. Before Mark's acquisition of the data, PGI had entered into licensing agreements with: (1) Transco Exploration Company (TXC), a subsidiary of Transco Energy Company (Transco); and (2) TXP Operating Company (TXPO), TXC's successor. These licensing agreements were entered into between 1982 and 1988, and authorized the use of certain seismic data.

Transco began to liquidate TXPO in 1988, and in June 1990 formed TXPRO to handle Transco's onshore oil and gas exploration operations, which would have been handled by TXPO. TXPO continued its winding up process during this time. By the end of 1991, PGI had transferred its interest in the licensed seismic data to Mark, subject to the existing licensing agreements.

In 1992, TXPO obtained Mark's consent to the transfer of the right to use the seismic data to TXPRO. Thus, TXPRO assumed the obligations of TXPO and TXC (TXPO's predecessor) under the licensing agreements.

In March 1994, Transco sold all of its stock in TXPRO to Paramount Co., Inc.[1] TXPRO remained the licensee of the seismic data. In May of that same year, Paramount and TXPRO merged, with Paramount being the surviving entity. In 1996, Nuevo Energy Co. and Paramount merged, with Nuevo being the surviving company.

Mark sued Nuevo[2] for breach of the licensing agreements claiming that the mergers resulted in the unauthorized disclosure of the licensed seismic data to Paramount and Nuevo, non-licensees. Both parties filed motions for summary judgment. The trial court granted Nuevo's motion and denied Mark's motion, resulting in a take-nothing summary judgment in favor of Nuevo.

In four points of error, Mark asserts the trial court erred: in granting Nuevo's motion for summary judgment; in denying Mark's motion for summary judgment, or alternatively, in not recognizing fact issues existed; and in failing to grant Mark's motion for new trial.

■■■ The standards for reviewing summary judgments are well established:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and

---

* The Honorable Frank G. Evans, retired Chief Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. Paramount was also a customer of Mark, but as to different seismic data.

2. Initially, Mark sued Nuevo, TXC, TXPRO, TXPO, Paramount, and Transco, alleging a number of causes of action. Subsequently, all defendants were dismissed except Nuevo, and the only remaining cause of action was the breach of contract claim.

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). When both parties move for summary judgment, the trial court considers all of the evidence accompanying both motions. *Commissioners Court v. Agan,* 940 S.W.2d 77, 81 (Tex.1997). When the trial court grants one motion and denies the other, we can review the propriety of both orders. *Holmes v. Morales,* 924 S.W.2d 920, 922 (Tex.1996).

■ Mark contends the trial court erred in granting Nuevo's motion for summary judgment because the corporate mergers violated prohibitions concerning the disclosure of seismic data. Mark argues that Nuevo violated the licensing agreements by acquiring the seismic data without paying Mark for it.

Nuevo contends that the licensing agreements do not include any restrictions concerning a change-of-control, merger, or stock sale of a licensee, and that Nuevo did not breach any licensing agreement when it acquired the seismic data through merger.

The licensing agreements involved provide in relevant part: [3]

*SECRECY.* [Licensee] agrees that data hereunder shall be for his own use in his exploration and development efforts, and shall not be *sold, traded, disposed of, or otherwise made available to third parties,* except it may be shown to partners as support evidence for joint ventures.

■ The purchaser of stock in a corporation does not purchase any of the corporation's assets, nor is a sale of all the stock of a corporation a sale of the physical properties of the corporation. *Tenneco, Inc. v. Enterprise Prods. Co.,* 925 S.W.2d 640, 645 (Tex. 1996). In *Tenneco,* the sale of all the stock in a company to an unrelated third party did not constitute a "sale, transfer, or assignment" of assets to that third party, and thus a right of first refusal held by the prior owner of the assets was not triggered. *Id.* at 645–46. The Court noted that the agreement involved did not prohibit a change in

the stockholders of the company, and that the parties could have included a "change-of-control" provision in the agreement that would have triggered the right of first refusal. *Id.* at 646. The Supreme Court emphasized, "We have long held that courts will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained." *Id.*

Similarly, in the present case the licensing agreements do not contain any provisions addressing mergers, changes-of-control, or stock sales. The parties could have included such provisions, but did not.

Under *Tenneco,* the sale of the TXPRO stock to Paramount did not result in a sale or transfer of the seismic data to Paramount. Further, when the wholly owned subsidiary (TXPRO) merged with its parent company (Paramount), no sale occurred. *Docudata Records Management Servs., Inc. v. Wieser,* 966 S.W.2d 192, 198 (Tex.App.— Houston [1st Dist.] 1998, pet. denied). Thereafter, under *Tenneco,* when Nuevo Energy purchased all of Paramount's stock and merged, no sale or transfer of the seismic data occurred; a statutory merger between two unrelated corporations is accomplished by the surviving corporation purchasing all the stock of the constituent corporation. *See* TEX. BUS. CORP. ACT arts. 5.01, 5.03, 5.04 (Vernon Supp.1999); 20 ROBERT W. HAMILTON, TEXAS PRACTICE: BUSINESS ORGANIZATIONS §§ 891–896 (1973 & Supp.1998).

The trial court did not err in granting Nuevo's motion for summary judgment. Accordingly, we overrule Mark's points of error.

We affirm the judgment.

Justice HEDGES concurring.

ADELE HEDGES, Justice, concurring.

I concur with the majority's disposition of this case. I do not agree with the majority and appellee's reliance on *Tenneco, Inc. v. Enterprise Prods. Co.,* 925 S.W.2d 640, 645 (Tex.1996) and the focus on whether the

---

**3.** The different licensing agreements contain substantially similar language regarding secrecy.

merger was a sale of assets or just a sale of stock.

It is uncontroverted that Mark's complaint arises from Paramount's merger with Nuevo. So the only question before this Court is whether a merger violates the non-disclosure agreement. The agreement provided:

> SECRECY. [Licensee] agrees that data hereunder shall be for his own use in his exploration and development efforts, and shall not be sold, traded, disposed of, or otherwise made available to third parties, except it may be shown to partners as support evidence for joint ventures.

Our focus should be whether the merger triggers this provision. I do not believe it does.

The Texas merger statute provides that the rights, title, and interests in property of the merging corporations vest in the surviving corporation upon merger without further act or deed and without any transfer having occurred. See TEX. BUS. CORP. ACT ANN. art. 5.06 (Vernon Supp.1999). The comments to the Model Business Code, upon which the Texas statute is based, state that a merger is not a conveyance or transfer and that the surviving corporation automatically becomes the owner of all real and personal property in the event of the merger. See MODEL BUS. CORP. ACT ANN. § 11.06 cmt. (1996 Supp.).

The Texas merger statute and the Model Code make clear that all of Paramount's interests vested in Nuevo immediately upon the merger. See TXO Prod. Co. v. M.D. Mark, Inc., No. 14–97–00105–CV, slip op. at 8, 1999 WL 129932 (Tex.App.—Houston [14th Dist.] March 11, 1999, no pet h.). The rights vests automatically, without transfer, and without further action. Id., slip op. at 8–9, 1999 WL 129932.

Therefore, on its face, the agreement was not triggered by the merger. Mark's agreement could have contained a specific prohibition against merger, but it did not. As recognized by the majority, courts will not "rewrite agreements to insert provisions parties could have included or to imply re-

straints for which they have not bargained." Tenneco, 925 S.W.2d at 646.