Alice GONZALES, Appellant,

v.

METHODIST RETIREMENT COM-MUNITIES d/b/a Edgewater Retirement Community, Appellee.

No. 14–99–01212–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 30, 2000.

Rehearing Overruled Jan. 4, 2001.

Mark W. Stevens, Galveston, for appellants.

Carla Cotropia, George W. Vie, Galveston, for appellees.

Panel consists of Justices ANDERSON, FOWLER, and FROST.

## OPINION

FOWLER, Justice.

Alice Gonzales brought this action against her former employer, Methodist Retirement Communities, d/b/a Edgewater Retirement Community, alleging that Edgewater discharged her in retaliation for reporting the abuse or neglect of a nursing home resident. The trial court found that there was no genuine issue of material fact concerning Gonzales's claim of reporting abuse under section 242.133 of the Texas Health & Safety Code, and "no basis in fact for a finding of reporting of abuse sufficient to sustain a cause of action under the section,"and granted summary judgment in favor of Edgewater. In one point of error, Ms. Gonzales challenges the granting of the summary judgment. Finding that Gonzales did not report abuse or neglect or other complaint as required by section 242.133, we affirm the judgment of the trial court.

## FACTUAL BACKGROUND

Edgewater is a retirement center for senior citizens. Gonzales is a nurse practitioner employed by Edgewater. On the evening of June 25, 1998, Gonzales came on duty to find that an 83 year old resident of Edgewater had fallen from a geriatric chair. After taking the resident's vital signs, Gonzales phoned Edgewater's medical director, Dr. Jones. Dr. Jones wanted to know if Gonzales had performed an assessment of the resident's condition. Gonzales replied that she did not feel capable of judging the extent of the resident's injuries and wanted to transport the patient by ambulance for an evaluation. Dr. Jones became upset with Gonzales, noting that an ambulance would cost $400, but told her that if she did not feel qualified to do an assessment, she could call Emergency Medical Services. (EMS) Insulted by the reference to her qualifications, Gonzales told Dr. Jones at the end of the phone conversation that he was not a good doctor, and said she was glad he was not taking care of her mother. Gonzales then called EMS.

That evening, Gonzales told the director of nurses, Dorothy Young, what had happened. Gonzales admitted that Dr. Jones seemed to be unhappy, and expressed her belief that the doctor would be upset with her for what she had said. Mrs. Young agreed.

The next day Edgewater fired Gonzales. She was informed that her termination was because of the statements she made to Dr. Jones which Edgewater considered insubordinate.

## PROCEDURAL BACKGROUND

After her termination, Gonzales filed suit against Edgewater. She claimed that Edgewater wrongfully terminated her in violation of Texas Health & Safety Code, which provides a cause of action against an institution that terminates employment of a person for reporting abuse or neglect. *See* TEX. HEALTH & SAFETY CODE ANN . § 242.133(a) (Vernon 1997). As it existed during the relevant time, the statute stated the following:

> A person has a cause of action against an institution, or the owner or employee of the institution, that suspends or terminates the employment of the person or otherwise disciplines or discriminates

or retaliates against the person for making a report or complaint under this chapter to the department or a law enforcement agency, for reporting the abuse or neglect or other complaint to the person's supervisors, or for initiating or cooperating in any investigation or proceeding of a governmental entity relating to care, services, or conditions at the institution.[1]

In her petition, Gonzales alleged that she had advised her supervisors "of [the resident's] fall, which could only have taken place as the result of neglect . . ." During discovery, Gonzales conceded that she had not "reported" anything other than the fact that the resident had fallen.

> Q: In other words, you didn't report there was any abuse of [the resident]?
>
> A: No.
>
> Q: And you didn't think that [the resident] was abused, did you?
>
> A: No.

The director of nursing also testified that, in their conversation the evening before termination, Gonzales had never used the words "abuse" or "neglect".

After Gonzales's deposition had been taken, Edgewater moved for summary judgment, claiming that there was no evidence that Gonzales had reported a claim of abuse or neglect within the meaning of Texas Health & Safety Code. In opposition to Edgewater's summary judgment motion, Gonzales submitted an affidavit, stating that the resident's fall from the chair "clearly indicated neglect by some facility staff." Gonzales felt this neglect was so obvious that she did not need to use the word "neglect" when reporting the incident to her supervisors.

After considering Gonzales's response, the trial court granted summary judgment to Edgewater, finding that "there is no basis in fact for a finding of reporting

abuse sufficient to sustain a cause of action under section 242.133(a) of the Texas Health & Safety Code." *Id.* at (a).

## STANDARD OF REVIEW

The proper inquiry on appeal is whether the defendant, in seeking summary judgment, fulfilled its initial burden (1) to establish as a matter of law that there remained no genuine issue of material fact as to one or more essential elements of the plaintiff's cause of action or (2) to establish its affirmative defense to the plaintiff's cause of action as a matter of law. *See Casso v. Brand,* 776 S.W.2d 551, 556 (Tex. 1989); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the non-movant must be taken as true. *See Nixon,* 690 S.W.2d at 549. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in her favor. *See id.*

## DISCUSSION

According to Edgewater, the evidence produced at the summary judgment proceeding proved that Gonzales neither made a "report" (because she did not file a written complaint), nor told Dr. Jones about an incident of abuse or neglect. Gonzales responds that her conversation was a report,[2] and ·she claims that her affidavit did raise a fact issue about whether she reported neglect. She pointed out that it was unusual for the resident to be in a geriatric chair because there was no doctor's order for one. Furthermore, she contends the fall "clearly indicated neglect by some facility staff . . ."; "[t]his was so obvious that I did not feel it necessary to use the word [sic] 'neglect.' " Consequently, the issues before us are whether Ms. Gonzales made a report and whether she

---

**1.** Act of June 20, 1997, 75th Leg., R.S., ch. 1159, § 1.25, 1997 Tex. Gen. Laws 4363, 4376 (amended 1999) (current version at Tex. Health & Safety Code § 242.133(a)).

**2.** There is no claim or issue here whether Ms. Gonzales reported abuse or "other complaint". The only issue is whether she reported neglect.

reported neglect. As we explain below, we do not need to address whether Ms. Gonzales made a report because, like the trial court, we conclude as a matter of law that Ms. Gonzales did not report an incident of neglect.

The legislature chose not to define "neglect" in the Texas Health and Safety Code. *See* TEX. GOV'T CODE ANN. § 312.002(a) (Vernon 1998); *Geters v. Eagle Ins. Co.*, 834 S.W.2d 49, 50 (Tex.1992). The *Oxford Encyclopedic English Dictionary* defines "neglect" as, "fail[ing] to care for or to do; be[ing] remiss about (*neglected their duty; neglected his children* )," and as a "lack of caring; negligence." OXFORD ENCYCLOPEDIC ENGLISH DICTIONARY 973 (1991). *Webster's* defines it similarly:

> 1 **a:** to give little or no attention or respect to ... DISREGARD, SLIGHT ... **b:** to fail to attend to sufficiently or properly: not give proper attention or care to ... **2:** to carelessly omit doing ... either altogether or almost altogether: leave undone or unattended to through carelessness or by intention ...
>
> **syn** NEGLECT, OMIT, DISREGARD, IGNORE, OVERLOOK, SLIGHT, and FORGET can mean in common to pass over something without giving it due or sufficient attention. NEGLECT implies failure to give full or proper attention to someone or something that has a claim on one's attention. . . .

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1513 (1993). *Black's Law Dictionary* also contains the same notion of failing to take care of or ignoring:

> The omission of proper attention to a person or thing, whether inadvertant, negligent, or willful; the act or condition of disregarding.

BLACK'S LAW DICTIONARY 1055 (7th ed.1999). Probably most pertinent to [the] neglect to a resident in a retirement home, is *Blacks's* definition of a neglected child:

> A child whose parents or legal custodians refuse to provide the necessary care and medical services for the child. *Id* at 233.

*Black's* also notes that, although "neglect" and "negligence" are used synonymously in bailment law, they are from different Latin roots. *Id.* Words commonly used to define neglect are "omit, disregard, and ignore" and the intent most likely meant in section 242.133(a) is that, by ignoring, disregarding, or being inattentive to the resident, the resident falls into a condition of want or suffering. The implication is that the neglect occurs over a period of time that, in relation to the resident's condition before the inattention, is significant enough to cause a condition of want or suffering. Thus, for a severely ill patient, a short amount of time may suffice to amount to neglect; for a healthier resident, a longer time may be required.

Turning now to Ms. Gonzales's conversation with Dr. Jones, we find no indication that Ms. Gonzales reported an act of neglect. As Edgewater pointed out, Ms. Gonzales, when discussing the incident, never used the word "neglect," not even later that evening when she discussed the fall and the conversation with her supervisor. Ms. Gonzales said only that a resident had fallen out of a geriatric chair. She did not know why or how the resident had fallen, nor did she say or imply that the resident had been ignored and fell because of inattention. We might infer from her comments that an employee may have been careless or negligent in the way they placed the resident in the chair; however, this does not translate into neglect under the statute. Thus, that a resident fell out of a chair into which she should have been buckled, is not, in and of itself, evidence that neglect—as that word is used in the statute—occurred.

Additionally, the thrust of the conversation between Ms. Gonzales and Dr. Jones confirms that Ms. Gonzales was not reporting neglect on the part of someone at Edgewater. Their discussion was not

about the fall itself and that it happened, but about the resident's condition and how best to evaluate her condition. As conveyed by Ms. Gonzales, each party felt frustrated with the other—Dr. Jones, because he thought Ms. Gonzales should be able to evaluate the resident's condition, and Ms. Gonzales, because she did not feel comfortable evaluating the resident's condition. The conversation was never about how the patient came to be on the floor, but about how to evaluate the resident's condition. By the end of the conversation, animosity clearly existed, at least on Ms. Gonzales's part, such that she sarcastically told Dr. Jones that she would not want him to treat her own mother.

In short, in the conversation, Ms. Gonzales did not report an act of neglect and even if she thought it was an act of neglect, she never put Dr. Jones on notice that, by calling him, she was reporting an act of neglect as contemplated by the Health and Safety Code.

### Conclusion

Finding that Edgewater proved that Ms. Gonzales did not report neglect to Dr. Jones, we overrule her point of error and affirm the judgment of the trial court.