NO. 07-08-0230-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

SEPTEMBER 3, 2009
_____

DAVIS MOORE AND DAVIS MOORE ELECTRIC, INC.,

Appellants

v.

KIM MORRIS, ROBERT HOBGOOD, AND MYLUBBOCKBANK,
as Successor in Interest to FIRST NATIONAL BANK,

Appellees
_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-541,030-A; HON. DAVID L. GLEASON, PRESIDING
_____

***Memorandum Opinion***
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Davis Moore and Davis Moore Electric, Inc. (collectively referred to as Moore) appeal from a final summary judgment denying them recovery against MyLubbockBank, as successor-in-interest to First National Bank. Moore had asserted claims of fraud and civil conspiracy against Kim Morris (Morris), a director of First National Bank and Robert Hobgood (Hobgood), a loan officer of First National Bank. We reverse the judgment.

*Background*

The conspiracy and fraud purportedly began by Hobgood inducing Moore to move his accounts to First National in exchange for the bank guaranteeing payment of various debts due him from Morris. Thereafter, Morris and Hobgood allegedly created an entity known as PHDM, LLC., and identified Moore as its "manager" without the knowledge or consent of Moore. First National, through the efforts of Hobgood and Morris, then loaned PHDM sums of money which eventually went to Morris. Moore allegedly knew nothing of this until demand was made for payment. After these circumstances occurred, First National merged with another financial institution, and the resulting entity became known as MyLubbockBank (MLB).

*Discussion*

Moore sought recovery from MLB under the doctrine of respondeat superior. That is, they sought to impute liability to MLB because of the employer/employee and director relationships involved. MLB endeavored to avoid liability by moving for a traditional summary judgment. The grounds alleged in that motion involved topics related to limitations, novation, accord and satisfaction, successor liability, and scope of employment. Because the motion was of a traditional nature, the burden lay upon MLB to prove, as a matter of law, that it was entitled to same. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex. 1985). It failed in that regard for the following reasons.

First, it was proposed that the claims of fraud were barred by the two-year statute of limitations found at §16.002 of the Texas Civil Practice and Remedies Code. They are actually governed by a four-year statute of limitations, *see* TEX. CIV. PRAC. & REM. CODE

2

ANN. §16.004(a)(4) (Vernon 2002), and MLB did not argue that it had expired by the time suit was filed.

Second, it was alleged that because MLB reduced the sum for which Moore was purportedly liable and Moore executed a new note to repay the new sum, there arose a novation or accord and satisfaction. MLB attempted to prove this via an affidavit executed by the president of MLB wherein he mentioned the sum originally owed, the amount of indebtedness represented by the new note, and the mere statement that "[t]his new note constituted a novation and accord and satisfaction of the previously existing note." Those utterances did not entitle MLB to judgment as a matter of law. This is so because the statement about the acts constituting a "novation and accord and satisfaction" was and is a mere conclusion. As such, it cannot support summary judgment. *Schindler v. Baumann,* 272 S.W.3d 793, 796 (Tex. App.–Dallas 2008, no pet.) (stating that conclusions are not competent summary judgment evidence).

Furthermore, the affidavit said nothing about an agreement between the parties wherein the new note would serve to resolve the pre-existing dispute. *See Jenkins v. Henry C. Beck Co.,* 449 S.W.2d 454, 455 (Tex. 1969) (describing an accord and satisfaction as a contractual modification that rests upon a new contract in which the parties *agree* to discharge the existing obligation by means of a lesser payment tendered and accepted); *Mandell v. Hamman Oil & Ref. Co.,* 822 S.W.2d 153, 163 (Tex. App.–Houston [1st Dist.] 1991, writ denied) (stating that a novation consists of 1) a valid previous obligation, 2) *an agreement* among all parties to accept a new contract, 3) the extinguishment of the previous obligation, and 4) a valid new agreement). And, because

3

the summary judgment record must be construed in a light most favorable to the non-movant, *Nixon v. Mr. Property Management Co.,* 690 S.W.2d at 548-49, we find it difficult to conclude that from the acts of reducing an existing debt and executing a new note, the parties must have intended an accord and satisfaction or novation.

Finally, even if the president's affidavit was competent evidence, it simply depicted a situation wherein one note was substituted for another; that is, a situation wherein the parties may have attempted to alter Moore's disputed contractual liability. Yet, his causes of action sounded in both contract (*i.e.* execution of a promissory note) and tort (breached fiduciary duty and fraud). So, even if one could argue that execution of the new note resolved the disputes concerning the sums owed under the old note, the bank president's own words fail to address whether it also resolved Moore's tort claims. At the very least, there is a material question of fact about that.

As for the allegation about MLB being insulated from the claims due to the merger, it is premised upon the representation that the liabilities it assumed on behalf of First National were contractually restricted to those incurred during the normal course of business. Yet, the record contains neither the merger agreement nor any other evidence of a contract so stating.

Regarding the matter of vicarious liability, MLB posited that the conduct of Morris and Hobgood fell outside the scope of their duties and responsibilities as a bank director or employee, respectively. Yet, again, there is no evidence of record describing the entire scope of their respective duties with First National. This makes it difficult to assess whether the two acted within or outside the authority granted the two. Indeed, that Hobgood was a bank loan officer for First National, that a loan officer most likely extends

4

loans on behalf of his employer, that banks normally charge and receive interest on the loans it extends, and that First National, through Hobgood, extended the loans at issue does little to negate the possibility that Hobgood was indeed acting within the scope of his employment though his motives may be suspect.

Given the state of the record before us and the applicable standard of review, we cannot say that MLB was entitled to summary judgment as a matter of law. Consequently, the summary judgment is reversed, and the cause is remanded to the trial court.


Brian Quinn
Chief Justice