NO. 07-11-0381-CV

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL D

 JANUARY 23, 2013
 _____________________________

 FRANCIS JAEGER, CHRISTIE JAEGER, DAN BECKMAN
 AND JERETTA BECKMAN,

 Appellants
 v.

 ROBERT HARTLEY, MARY CORRIGAN, CHARLES ALLEN REEVES AND EDITH M. VAUGHT
 A/K/A MARY EDITH VOUGHT A/K/A MARY EDITH VOUGHT, INDIVIDUALLY AND D/B/A
 ELKINS RANCH, ET AL.,

 Appellees
 _____________________________

 FROM THE 181ST DISTRICT COURT OF RANDALL COUNTY;

 NO. 59,377-B; HONORABLE JOHN B. BOARD, PRESIDING
 _____________________________

 Opinion
 _____________________________

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.
 We have before us an appeal from final summary judgments denying
Francis and Christie Jaeger (the Jaegers) and Dan and Jeretta Beckman (the
Beckmans) recovery against Robert Hartley, Mary Corrigan, Charles Allen
Reeves, and Edith M. Vaught, individually and as Elkins Ranch, Mary
Corrigan and Charles Allen Reeves, as co-trustees of the Louise Reeves
Revocable Living Trust UTD, independently and as Elkins Ranch, Edith Vaught
as trustee of the Vaught Family Revocable Living Trust, independently and
as Elkins Ranch, and Michael Lancaster (collectively referred to as
Elkins). We reverse.[1]
 Background
 The dispute arose from an accident occurring on the Elkins Ranch.
The Beckmans and Jaegers were participating in a commercial tour of Palo
Duro Canyon allegedly conducted by Elkins Ranch. The latter provided both
a jeep for them to ride in and a driver or tour guide (i.e., Lancaster) to
operate the vehicle. Evidence also appears that indicates they were told
to obey Lancaster's directions.
 While the tour was proceeding up a steep incline in the canyon, the
jeep stalled, its brakes failed, and it began rolling down the incline. As
it did, Lancaster told the Jaegers and Beckmans to jump from the vehicle.
They were not wearing seat belts at the time per the directive of
Lancaster. Eventually the jeep tumbled onto its side and stopped.
 The Jaegers and Beckmans suffered injuries and sued Elkins. The
latter moved for summary judgment, contending that the document entitled
Waiver and Assumption of Risk executed by their opponents relieved them of
liability, that their opponents breached the foregoing contractual waiver
by suing, and that recovery could be had only if they were reckless (as
opposed to merely negligent). The motions for summary judgment were
granted, but the trial court specified no particular ground upon which it
acted.
 Discussion
 1. Standard of Review
 The standard of review we must apply when entertaining an appeal from
a final summary judgment is described in Nixon v. Mr. Property Management
Co., 690 S.W.2d 546, 548 (Tex. 1985). There is no need for us to reiterate
it.
 2. Effect of the Waiver and Assumption of Risk Document
 In its motion for summary judgment, Elkins asserted that the Jaegers
and Beckmans assumed the risk of injury arising from their participation in
the tour by signing the aforementioned waiver and assumption of risk
agreement.[2] The latter contained the following language:
 I . . . voluntarily sign this Waiver and Assumption of Risk in favor
 of ELKINS RANCH, its Owners, agents, or employees, in consideration
 for the opportunity to enter upon and use the Ranch facilities; and to
 engage in activities sponsored by the Owners . . .

 Driving, or parking, of customers' vehicles; Walking; Hiking;
 Horseback riding and instruction; Jeep tours; Hunting; Interactions
 with all livestock, or wildlife; Camping . . .; Consumption of food,
 or beverage; Use of customers [sic] own personal horse, vehicle,
 trailer, or equipment while on Ranch property; Any and all indoor, or
 outdoor activities, however related, while on Ranch premises.

 I understand that there are certain risks and dangers associated with
 the various activities, use of the facilities, and the wilderness
 environment; and that these risks have been fully explained to me. I
 fully understand the danger involved. I fully assume the risks
 involved as acceptable to me, and I agree to use my best judgment in
 undertaking these activities and follow all safety instructions.

 I do hereby waive, release, acquit and forever discharge Elkins Ranch,
 its Owners, agents, employees and all persons and entities of; [sic]
 from any/all actions, causes of action, claims, demands, damages,
 costs, loss of services, expenses, and compensation, on account of, or
 in any way growing out of, any and all known and unknown personal
 injuries, property damage, or death resulting from my presence on
 Ranch premises, use of facilities, or from my participation in the
 activities. This Waiver/Release contains the Entire Agreement between
 the parties, and the terms of this Waiver/Release are contractual and
 not a mere recital.

 I further state that I am a competent adult of lawful age, and I have
 carefully read the foregoing Waiver/Release and know its contents. I
 assume these risks and sign the same of my own free will . . . .

The executed document allegedly "precludes any recovery" by the signatories
against Elkins. And, the latter cite our opinion in Willis v. Willoughby,
202 S.W.3d 450 (Tex. App.-Amarillo 2006, pet. denied) to support their
position.
 In Willis, the plaintiff (Willis) broke her ankle while participating
in self-defense training. That is, she was attempting to thwart a charge by
her instructor when the two collided and fell to the ground. Engaging in
this exercise somehow resulted in the broken ankle. Before participating
in the activity, Willis executed a document containing the following
language:
 I understand that self-defense training is inherently dangerous and I
 knowingly and willingly assume all risk of injury or other damage
 associated with such training. I release all teachers, students, and
 other parties from any claim of any and all liability that may result
 from any injury received, and I hereby waive all claims that I, or
 anyone else on my behalf, may make with respect to such injury or
 damages. I agree for myself and my successors that . . . should I or
 my successors assert any claim in contravention to this agreement, I
 and my successors shall be liable for the expenses including . . .
 legal fees incurred by the other party or parties in defending unless
 the party or parties are adjudged finally liable on such claim for
 willful and wanton negligence . . . .
Willis v. Willoughby, 202 S.W.3d at 452. We held that by signing the
document, Willis had contractually "assumed 'all risk of injury . . .
associated with such training,'" and she "effectively relieved Willoughby
of the duty to protect her from foreseeable injury while instructing her in
self-defense." Id. at 453; accord Thom v. Rebel's Honky Tonk, No. 03-11-
0700-CV, 2012 Tex. App. Lexis 7555, *17-18 (Tex. App.-Austin August 30,
2012, no pet.) (stating that "[t]he effect of the [contractual] assumed-
risk defense is to negate any duty owed to the plaintiff by the defendant
to protect against foreseeable risks"). We have no question about the
continued viability of the law espoused in Willis. Yet, that does not mean
it is of benefit to Elkins.
 As we said in Willis, the common law doctrine of assumed risk no
longer exists. Willis v. Willoughby, 202 S.W.3d at 453. Yet, one may
still assume the risks inherent in engaging in a certain activity by
contract and thereby relieve others of a duty to protect against
foreseeable risks. Id. And, therein lies the quandry -- determining what
risks are foreseeable. A good starting point in making that determination
would be the writing or contract that supposedly vitiates the duty of care.
 See Rice v. Metropolitan Life Ins. Co., 324 S.W.3d 660, 669 (Tex. App.-
Fort Worth 2010, no pet.) (stating that we turn to the contract's wording
to assess the obligations assumed by the parties).
 The agreement before us explains that it was to be executed in
exchange for the signatory being allowed to "enter upon and use the Ranch
facilities; and to engage in activities sponsored by the Owners." Through
it, the signatory agreed to "fully assume the risks involved." The "risks
involved" consisted of those "certain risks and dangers associated with the
various activities, use of the facilities, and the wilderness environment .
. . ." And, the "activities" contemplated or occurring on the Ranch were:
 Driving, or parking, of customers' vehicles; Walking; Hiking;
 Horseback riding and instruction; Jeep tours; Hunting; Interactions
 with all livestock, or wildlife; Camping . . .; Consumption of food,
 or beverage; Use of customers [sic] own personal horse, vehicle,
 trailer, or equipment while on Ranch property; Any and all indoor, or
 outdoor activities, however related, while on Ranch premises.

So, 1) the nature of the environment, i.e., a ranch and wilderness, 2) the
facilities present and their use, and 3) the activities being conducted
combine to form the nucleus from which the risks assumed were to emanate.
That the Jaegers and Beckmans were injured while venturing into the canyon
wilderness while on a jeep tour of that wilderness is clear. But the
injuries did not stem simply from the tour being conducted in a wilderness
or canyon environment. That is, canyon walls did not give way or the
ground subside or the terrain cause the jeep in which they rode to leave
the pathway or flip, or the like. Similarly, exposure to or interaction
with the flora or fauna of the environment was not the event that caused
injury.
 Instead, summary judgment evidence indicates that the injuries arose
from the Elkins' tour guide attempting to ascend a steep slope with a jeep
that had defective brakes. There is no evidence that anyone told the
Jaegers or Beckmans that they would be traversing rugged terrain in such a
vehicle before they signed the release instrument. Nor is there evidence
that they were made aware of the possibility that the vehicle on which they
would ride could be defective and ill-suited for the venture. Nor were
they told that the tour would or could continue on equipment that became
defective during the event. More importantly, the Elkins' tour guide
became aware of the defect with the brakes yet continued the tour. These
circumstances and the relationship between the act and injury they evince
are unlike those in Willis. There, Willis' injury occurred during a
training exercise that went somewhat awry. The nexus between the two was
quite direct. As we said there:
 . . . the training contemplated . . . involved learning techniques to
 counteract physical attack from those whom [Willis] guarded. The
 techniques were not merely verbal but implicated the use of physical
 contact and force. That the application of contact and force
 sufficient to deter aggression can result in bodily injury is a matter
 of common sense; indeed, Sandra herself admitted, via deposition, that
 she understood the possibility of that happening while engaged in the
 class.

Willis v. Willoughby, 202 S.W.3d at 453. Suffering injury as a result of
being struck or falling during a self-defense exercise is quite foreseeable
since the exertion of force or application of physical contact by another
is part of the exercise. Willis had agreed to engage in an exercise
involving forceful physical contact, knew of the potential for injury
arising from such contact, and suffered an injury caused by the very
contact in which she was to engage. Had she been injured because the
exercise had resulted in her falling upon a mat containing a sharp object
or because the floor gave way from the impact, or the like, the outcome may
not have been the same.
 The same is true of the circumstances in Honky Tonk. There, the
plaintiff was thrown from a mechanical bull. He had previously signed a
release with the following language:
 I acknowledge that riding a mechanical bull entails known and
 unanticipated risks that could result in physical or emotional injury,
 paralysis, death to myself, to property, or to third parties. I
 understand that such risk simply cannot be eliminated without
 jeopardizing the essential qualities to the activity.

 THE RISKS INCLUDE, BUT ARE NOT LIMITED TO[]: Falling off of or being
 thrown from the mechanical bull, which could result in
 muscu[lo]skeletal injuries including head, neck and back injuries.

Thom v. Rebel's Honky Tonk, No. 03-11-00700-CV, 2012 Tex. App. Lexis 7555,
at *18-19. That verbiage expressly mentioned risks of injury due to being
thrown from the device, and more importantly, that is how the plaintiff in
Honky Tonk suffered injury -- he was thrown from the bull. There was no
evidence that the ride was defective or that the owners knew of any defect
in the bull yet allowed the participant to mount it.
 Here, it may be reasonable to foresee from the writing at bar the
potential for injury arising from one's traversing a wilderness or canyon
by vehicle. But, it is not reasonable to infer from the same verbiage that
part of the tour would consist of being driven around a wilderness and
canyon area in a vehicle with defective brakes or that an Elkins' employee
would continue a tour through a canyon while knowing about the defect.[3]
 We therefore conclude that the summary judgment record submitted by
Elkins does not demonstrate as a matter of law that the risk at bar (i.e.,
using a jeep with defective brakes to conduct a wilderness tour and
continuing the tour after gaining knowledge of such a defect) causing the
injury at bar (i.e., being thrown from the jeep because its brakes could
not stop it from rolling down a steep ascent) was foreseeable. Said
another way, Elkins has not demonstrated as a matter of law that the
Jaegers and Beckmans gave, in the words used in Farley v. M M Cattle Co.,
529 S.W.2d 751, 758 (Tex. 1975), "knowing and express oral or written
consent to the dangerous activity or condition." Elkins has not shown its
entitlement to summary judgment under the contractual doctrine of assumed
risk.
 3. Standard of Liability Requires Recklessness
 Elkins also sought summary judgment on the ground that its jeep tour
was comparable to participating in a sporting event and that those
sponsoring such events are liable only for injuries arising from reckless
or grossly negligent conduct. They cited our decision in Hathaway v.
Tascosa Country Club, Inc., 846 S.W.2d 614 (Tex. App.-Amarillo 1993, no
writ), as support for the proposition. In Hathaway, the plaintiff was hit
by a golf ball while playing golf. Because getting hit with a golf ball
while on a golf course was a foreseeable event, we concluded "that for a
plaintiff to prevail in a cause of action against a fellow golfer, the
defendant must have acted recklessly or intentionally." Id. at 617.[4]
Were we to assume that participating in a canyon tour is comparable to
playing golf, Elkins still would not be entitled to summary judgment as a
matter of law, however.
 To be reckless, a defendant must engage in conduct that he knew or
should have known posed a high degree of risk of serious injury but
disregarded that risk. Wal-mart Stores, Inc. v. Alexander, 868 S.W.2d
322, 326 (Tex. 1996). Evidence appears of record here disclosing that the
Jaegers and Beckmans were directed by Elkins to obey the employee provided
as their tour guide, their tour guide informed them not to wear their seat
belts, the tour guide began and then became aware of the jeep's defective
brakes, and the employee continued that tour by going up a steep slope
despite knowing of the defect. A factfinder could reasonably infer from it
that the employee acted recklessly.[5] Thus, there is evidence satisfying
the standard of misconduct invoked by Elkins.
 4. Breach of Contract
 Elkins finally sought summary judgment on the ground that the
Beckmans and Jaegers breached their contract wherein they assumed the risk
of injury by suing Elkins. Having previously concluded that the risks
assumed did not encompass the risk causing injury here, Elkins failed to
prove, as a matter of law, that the suit breached the agreement.
 The summary judgments are reversed and the cause remanded to the
trial court.

 Brian Quinn
 Chief Justice

-----------------------
 [1]Question has again arisen as to whether this court has jurisdiction
over the appeal. The matter involves the claims asserted against Robert
Hartley. He was a named defendant who died before filing any motion for
summary judgment. Nonetheless, the trial court executed a summary judgment
expressly stating that "[t]his judgment finally disposes of all parties and
all claims and is appealable." (Emphasis added). The latter is a clear
expression of the trial court's intent to render a final, appealable decree
despite granting relief to a defendant who had not requested it. This
situation is akin to that described by the Supreme Court in Jacobs v.
Satterwhite, 65 S.W.3d 653, 655 (Tex. 2001), where it recognized a
difference between granting relief to parties in excess of that actually
sought in a motion for summary judgment and granting relief that fails to
dispose of all claims and parties. The latter does not result in a final,
appealable decree while the former is. Here, the words used by the trial
court in its summary judgment granted complete relief and disposed of all
parties and claims. As such, it is final, though reversible as to the
claims asserted against Robert Hartley.

 [2]While the document mentions both an assumption of risk and waiver,
Elkins relies simply on the former to defeat liability. So we render no
opinion on whether the two defenses are one and the same or actually two
distinct theories.
 [3]We note that the record contains evidence that the tour guide
requested another employee of Elkins to bring him brake fluid during the
tour because the jeep's brakes were not working. That individual appeared
in a separate vehicle, but no fluid was added to the brake system. It was
after this event that the tour guide 1) directed the Beckmans and Jaegers
to return to the jeep, and 2) continued the tour.
 [4]But see, McClain v. Baker, No. 14-96-00487-CV, 1997 Tex. App. Lexis
3808, at *4 (Tex. App.- Houston [14th Dist.] July 24, 1997, no writ) (not
designated for publication) (stating that "the Texas Supreme Court recently
rejected the reckless disregard standard for claims involving competitive
contact sports because the reckless or intentional standard 'is not
workable to ferret out unmeritorious claims.' Davis v. Greer, 940 S.W.2d
582, 583 (Tex. 1997)" and that the standard is simply one of
foreseeability).

 [5]Whether that conduct may be imputed to his employers is not before
us.